BROWN v LTV AEROSPACE CORPORATION

Docket No. 55499. Argued November 7, 1974 (Calendar No. 9).—
Decided September 8, 1975. Rehearing denied 395 Mich —.

Russell W. Brown, James Boyer, and others were employees of
LTV Aerospace Corporation. Upon being laid off they registered
with the Employment Security Commission and otherwise qual-
ified for unemployment benefits. LTV claimed that they were
not "unemployed" for specified segments of the layoffs which
LTV designated for allocation of certain vacation pay and other
allowances. The Employment Security Commission Appeal
Board held that the employees had received disqualifying vaca-
tion pay and denied benefits for the periods in question. The
Macomb Circuit Court, Edward J. Gallagher, J., dismissed the
appeal of Boyer, who was a resident of Oakland County, for
lack of jurisdiction and affirmed the appeal board's decision as
to the remaining plaintiffs. The Court of Appeals, V. J. Bren-
nan, P. J., and Holbrook and Van Valkenburg, JJ., affirmed
(Docket No. 13255). Plaintiffs appeal. *Held:*

1. The employer had the authority to designate a period for
allocation of vacation pay for earned unused vacation time to a
period of layoff. Judgment is reserved on whether the defend-
ant has designated a period for allocation of the claimants'
1969 accrued but unused vacation time, the issue is remanded
to the appeal board to establish a comprehensive record, and
the parties are invited to submit briefs on this issue after the
establishment of a record.

2. The pro-rata vacation allowance at the time of layoff may
be considered as vacation pay like that paid at the employee's
anniversary, and was not a "termination allowance" within the
meaning of the statute which provides that termination allow-
ances shall not be deemed wages.

3. Boyer's appeal could not be joined with those of the other

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 76 Am Jur 2d, Unemployment Compensation §§ 79, 86.
Right to unemployment compensation as affected by vacation or
holiday payment in lieu thereof. 30 ALR2d 366.
[5–7] 76 Am Jur 2d, Unemployment Compensation § 93.

plaintiffs because he resided in a different circuit from them and could not bring his appeal in their circuit.

50 Mich App 237; 213 NW2d 254 (1973) reversed.

1. UNEMPLOYMENT COMPENSATION—LAYOFF—VACATION PAY—ALLOCATION.

The Employment Security Act permits an employer to designate a period during a layoff for allocation of vacation pay which constitutes remuneration to the employee, disqualifying him wholly or partially for unemployment benefits (MCLA 421.48).

2. UNEMPLOYMENT COMPENSATION—LAYOFF—VACATION PAY—ALLOCATION.

Under the Employment Security Act the employer has the authority to designate the period during a layoff to which vacation payments are to be allocated if the employment contract or agreement does not specify the period to which payments shall be allocated (MCLA 421.48).

3. UNEMPLOYMENT COMPENSATION—PRO-RATA VACATION ALLOWANCE —LAYOFF—REMUNERATION.

Accelerated payments of pro-rata vacation allowances at the time of layoff are not termination allowances; hence they are remuneration disqualifying the recipient for unemployment compensation (MCLA 421.48).

4. UNEMPLOYMENT COMPENSATION—PRO-RATA VACATION ALLOWANCE —VACATION—EMPLOYMENT SECURITY ACT.

A "pro-rata vacation allowance at the time of termination", so designated in a collective bargaining agreement, is a vacation allowance when found in a section of the agreement concerned with vacation pay, and not a "termination allowance" deemed not to be remuneration within the meaning of the Employment Security Act, and when allocated to a period properly designated may be disqualifying vacation pay under the Employment Security Act (MCLA 421.48).

5. UNEMPLOYMENT COMPENSATION—APPEAL AND ERROR—PARTIES.

An unemployment compensation claimant may not join other claimants in their circuit in which he does not reside to prosecute an appeal from a decision of the Employment Security Appeal Board in circuit court.

6. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—APPEAL AND ERROR—JURISDICTION.

The section of the Employment Security Act setting forth review procedures from determinations of the appeal board is a statu-

tory grant of jurisdiction to certain circuit courts; if an appeal is improperly filed in the wrong court, that court has no option but to dismiss the action for lack of jurisdiction (MCLA 421.38).

7. PARTIES—CLASS ACTION—COURT RULES—EMPLOYMENT SECURITY ACT.

The basic prerequisite to class actions, that the number of members is so numerous as to make it impracticable to bring them all before the court, should be read into the court rule providing that claimants under the Employment Security Act whose rights to unemployment compensation turn upon the provisions of the act shall be deemed to constitute a class for appeal to the circuit court under § 38 of the act and any subsequent appeals, and a group of six plaintiffs, five of whom are already in the court which has statutory jurisdiction of their appeal, can hardly be said to be a group "so numerous" as to qualify for class action status so that it can represent the sixth member, whose proper appeal is in a different court (MCLA 421.38; GCR 1963, 208.6).

*John A. Fillion, Jordan Rossen, Edward G. Fabré, Leonard Page,* and *M. Jay Whitman,* for plaintiffs.

*Dickinson, Wright, McKean & Cudlip* (by *Patrick J. Ledwidge* and *B. Kingsley Buhl),* for defendant LTV Aerospace Corporation.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

WILLIAMS, J. The major question in this Michigan Employment Security Act (MESA)[1] case is whether or not certain action taken by defendant employer satisfied MESA § 48[2] and disqualified

---

[1] MCLA 421.1 *et seq.;* MSA 17.501 *et seq.*

[2] MCLA 421.48; MSA 17.552. Section 48 pertinently reads:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of

plaintiff employees for unemployment compensation. That action was defendant employer's report to MESC, after laying off plaintiff employees, that it was allocating certain amounts to a period of that layoff as vacation pay. The critical language of § 48 is "[a]ll amounts paid * * * for a vacation or a holiday * * * shall be deemed remuneration * * * for the period designated * * * ". If the employer's "amounts paid" were "remuneration", then, of course, plaintiffs would not be "unemployed" and hence not qualified for unemployment compensation. The possible problem with defendant employer's action is that the defendant employer did not communicate to the laid-off employees "the period designated" during which the "amounts paid * * * for a vacation or a holiday" were to be made. The employees may have thought they were, and acted as though they were, "unemployed" as they were not specifically told that the period was designated for allocation of "amounts paid * * * for a vacation or a holiday".

Specifically we are asked to resolve the following questions:

1. May an employer designate a period for allocation of vacation pay to a period of layoff?

---

less than full-time work if the remunerations payable to him is less than his weekly benefit rate:

\* \* \*

"All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, and amounts paid in the form of retroactive pay, or in lieu of notice, shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27(c), for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit: Provided, however, That payments for a vacation or holiday made, or the right to which has irrevocably vested, after 14 days following such vacation or holiday, and payments in the form of termination, separation, severance or dismissal allowances, and bonuses, shall not be deemed wages or remuneration within the meaning of this section."

2. Did the defendant employer have the authority to designate a period for the allocation of 1969 accrued, unused vacation time?

3. Did the defendant properly designate the period for allocation of the 1969 accrued, unused vacation time?

4. Did the pro-rata vacation allowances received by the employees at the time of layoff constitute "termination, separation, severance or dismissal allowances, and bonuses" within the meaning of the proviso to § 48 and consequently, cannot be considered disqualifying remuneration?

5. May claimant Boyer join in an action filed in a circuit court located in a county in which he does not reside?

We answer questions 1 and 2 affirmatively and questions 4 and 5 negatively. We reserve judgment on whether the defendant has designated a period for allocation of the claimants' pay related to their 1969 accrued but unused vacation time and invite the parties to submit briefs on this issue. Set out in § IV of this opinion are some of the questions which the parties may wish to address themselves.

## I —FACTS

The basic facts are not in dispute. Plaintiffs were employees of LTV Aerospace Corporation (LTV), one of the defendants in this action.[3] Each plaintiff was laid off from work for periods ranging from four to ten weeks during the latter part of 1969 and early 1970.[4] Upon being laid off the

[3] The Michigan Employment Security Commission was added as a defendant when the plaintiffs' consolidated action was appealed to the Macomb Circuit Court.

[4] The dates and number of days of the layoff periods as well as the amounts of unused vacation time and pro-rata allowance allocated, etc., vary among individual plaintiffs.

plaintiffs registered with the MESC and otherwise qualified for unemployment compensation benefits. However, LTV claimed that plaintiffs were not "unemployed" within the meaning of § 48 for specified segments of the layoffs which LTV allegedly designated for allocation of certain vacation pay and other allowances. The allocations originated from two sources: (1) under Article XV, § 7(a) of the LTV-UAW agreement the plaintiffs were entitled to 80 hours vacation in 1969, and although actual payment was made on the employees' anniversary-of-employment date, payment for the unused portions of the authorized vacation time was applied to a portion of the layoff; and (2) under § 7(b) of the LTV-UAW agreement, employees in the event of a layoff were to receive accelerated payment of a pro-rata share of the vacation allowance between the last anniversary date and the date of layoff, and this pro-rata amount was paid to the plaintiffs at the time they were laid off. From the record it is unclear when the plaintiffs first learned that their employer intended to designate a portion of the layoff for allocation of pay for the 1969 unused vacation time but it appears that such notice was not received until after the periods designated had commenced or had passed. The MESC held that plaintiffs had received disqualifying vacation pay as alleged by LTV and denied benefits for the periods in question. The referee except for one minor modification[5] affirmed the commission's determination on April 10, 1970. The referee's decision was affirmed on October 16, 1970 by the appeal board. Plaintiffs then appealed to

[5] The referee modified the redetermination of the commission, holding that the commission was incorrect in charging plaintiff Boyer with four hours vacation pay totaling $18.36 for the week ending October 11, 1969 because that amount was less than one-half his weekly benefit rate and that consequently he was entitled to full benefits for that week under the provisions of § 27(c) of the MESA.

the Macomb Circuit Court which on December 2, 1971 dismissed the appeal of Boyer, who was a resident of Oakland County, for lack of jurisdiction and affirmed the appeal board decision as to the remaining plaintiffs. The Court of Appeals affirmed the circuit court (50 Mich App 237; 213 NW2d 254 [1973]) and we granted leave on April 16, 1974. 391 Mich 813.

## II —EMPLOYER MAY DESIGNATE PERIOD DURING LAYOFF FOR ALLOCATION OF VACATION PAY

That the employer may lawfully designate a period during a layoff for the allocation of vacation pay has been settled in this state. See *Malone v Employment Security Commission,* 352 Mich 472; 90 NW2d 468 (1958). See also *Employment Security Commission v Vulcan Forging Co,* 375 Mich 374; 134 NW2d 749 (1965). The employer in *Malone* designated a two-week period during a layoff and paid the employees various amounts of vacation pay in accordance with the union contract. This Court endorsed as correct the circuit court's holding that such payments constituted remuneration under § 48.[6] It is apparent that this was the very purpose of this part of § 48; *i.e.,* to permit the employer to protect his employment experience rating account by substituting vacation pay for unemployment compensation payment.

## III —LTV HAS AUTHORITY TO "DESIGNATE"

Having determined that an employer may desig-

[6] The Court went on to accord plaintiffs benefits at a reduced rate because the vacation pay received, even though it constituted remuneration, was insufficient to completely disqualify the plaintiffs from all benefits. However, for our purposes it is significant that the Court treated payments received for a vacation designated as part of a layoff period as remuneration.

nate a period during a layoff for the allocation of vacation pay, we must next determine whether LTV has the authority to make a designation of the period for allocation of such vacation pay. At this point it is necessary to recall that defendant made allocations from two sources—the unused earned and vested 1969 vacation time and the accelerated payment of "pro-rata vacation allowance at the time of termination". Here we are concerned only with the former; the pro-rata allowances will be discussed in § V of this opinion.

Section 48 provides that the period to which disqualifying payments are to be allocated may be:

"designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit."

Under § 48, then, the designation may be made in the employment contract or agreement but if it is not, the employer has the authority to make such a designation. The LTV-UAW agreement contains no contractual designation as to the 1969 vacation pay. Likewise it contains nothing which prohibits the employer from making such a designation.[7]

---

[7] In fact the LTV-UAW agreement contains language which suggests that the parties intended that the employer should have the power to designate. Section 7(d) of the agreement states in pertinent part:

"The determination of whether there shall be a vacation or vacation pay in lieu of a vacation *shall be solely at the discretion of the Company.* Supervision will give consideration to the seniority of his employees when scheduling vacations." (Emphasis added.)

Consequently, the employer, under § 48, has the authority to make such a designation.[8]

## IV —"FOR THE PERIOD DESIGNATED"

We have established that LTV had the authority to designate a period for allocation of the 1969 vacation pay. The question remains whether LTV made an effective designation.

---

[8] This Court has recognized that whether or not the employer has the discretion to determine if there is to be vacation or payment in lieu of vacation is crucial to the question whether allocated payments are treated as disqualifying vacation pay or as bonuses. *Renown Stove Co v Unemployment Compensation Commission,* 328 Mich 436; 44 NW2d 1 (1950); *Hubbard v Unemployment Compensation Commission,* 328 Mich 444; 44 NW2d 4 (1950); *Rich Manufacturing Corp v Lindsey,* 376 Mich 241; 137 NW2d 140 (1965). The rule emanating from these decisions appears to be that if the employee possesses the option to take payment in lieu of vacations, then the employer's allocation of funds will be treated as a bonus and the employee is eligible for receipt of unemployment compensation benefits. However, if the employer retains sole discretion, then allocation by the employer will be treated as disqualifying vacation pay if the other requirements of § 48 are met. In *Renown Stove Co v Unemployment Compensation Commission,* 328 Mich 436, 443; 44 NW2d 1 (1950), this Court describes this rule in the following language:

"It will be noted that under the contract the employer did not have the option of laying employees off for 1 or 2 weeks, declaring the layoff to be a vacation and designating the 40 or 80 hours' pay in lieu of vacation provided for in the contract, to be, in fact, vacation pay; on the contrary, the option rested with the employees to elect whether they would take vacation with pay or a bonus of 40 or 80 hours' pay in lieu of vacation with pay. The employees covered by this contract exercised their option and elected to receive a bonus * * * as they had a right to do under the contract. The payment so received was, therefore, a bonus and not vacation pay and, in consequence, the employees involved did not receive a vacation with pay."

In the instant case, LTV, unlike the employers in *Renown Stove Co* (under one of the two contracts involved in this case), *Hubbard* and *Rich,* had the sole discretion to determine whether there would be vacations or payments in lieu of vacations.

Section 7(d) of the LTV-UAW agreement provides in pertinent part:

"The determination of whether there shall be a vacation or vacation pay in lieu of vacation shall be solely at the discretion of the company."

Consequently, under the rule established in these cases, LTV has retained the right to designate vacations to layoff periods and treat amounts allocated as disqualifying vacation pay. The precise language used in § 7(d) of the LTV-UAW agreement was no doubt carefully selected with the intent to accomplish this result.

In this case LTV did not notify its employees when it laid them off that it was "designating" all or a part of their layoff period for allocation of "amounts paid * * * for a vacation or holiday". In fact it is not clear LTV directly notified its employees of the "designation" at any time. What appears to have happened is that some time after the layoff began when employees sought unemployment compensation, the MESC before responding to them inquired of LTV whether there was reason why compensation should not be paid. In reply LTV advised that they were allocating amounts of vacation pay for a designated period within the layoff. In turn MESC advised employees whether and when they might be entitled to unemployment compensation because of the amounts so allocated for the period designated.

What is at issue is not how the "amounts paid" are *"allocated"*, but how the *"period"* is *"designated"*. The pertinent language of § 48 is:

"All amounts paid * * * for a vacation or a holiday * * * shall be deemed remuneration * * * for the period *designated* by contract * * * or if there is no contractual specification of the period to which such payments shall be allocated, then for the period *designated* by the employing unit or former employing unit * * * ." (Emphasis added.)

In determining whether LTV made an effective designation we are faced with the problem of ascertaining what the legislators intended when they provided that the employer may designate a period. Interpretation of the term "designated" in § 48 is a matter of first impression in this Court.

The record before us is not as comprehensive as we would like in order to make a just legal and administratively viable decision. We therefore re-

mand this particular issue to the appeal board to establish such a record. Upon the establishment of such record we will set the case down for argument on this specific issue and invite the parties to submit briefs.

In attempting to arrive at a proper and practical construction of the statutory requirement of designation, it is important to conceptualize the statutory consequences of a given construction so that it will be in harmony with the whole purpose of the legislation. Obviously any interpretation will have specific consequences on both employee and employer.

For example, if it is construed that the Legislature did not intend as an element of the term "designated" that the laid-off employee be notified in advance or contemporaneously with the commencement of the designated period that vacation pay is to be allocated so that he is not "unemployed" the employee may suffer as a result. An employee who is "not unemployed" is not required to report to the MESC. If an employee is not notified prior to the commencement of the designated period that he will be charged with receiving disqualifying vacation pay, he may assume that he is "unemployed" and may go through all the formalities of qualifying for unemployment compensation such as registering at the employment security office with the ever-present problem of long lines and endless delays. He must be seeking and available for suitable work. In short, by and large, he would be doing exactly the opposite of what he would be doing if he were on vacation.

The effect on the employee when he is not notified prior to commencement of the designated period is dramatically illustrated by claimant Chennery's statement:

"If this decision [of the MESC denying benefits] is correct and I *must take* two weeks vacation then why do I have to report to the unemployment office during those two weeks? This is unfair * * * ."

On the other hand, if the term "designated" is construed as imposing stringent individual notice requirements upon the employer, situations might arise, such as when a part shortage necessitates immediate plant shutdown, where it is impossible for the employer to properly notify all of his employees. The employer would then be prevented from allocating the vacation pay and as a result his employment experience rating account might be adversely affected.

It would be inappropriate for us to address the question (of what constitutes effective notice) without first giving the parties an opportunity to discuss the issues involved. A number of questions come to mind when examining the phrase "period designated by the employing unit." In submitting briefs on this question the parties might consider, *inter alia,* the following:

1. To have effectively designated a period for allocation of vacation pay is it enough for the employer to make some in-house bookkeeping entry with notification to the MESC after the employee files a claim or must the employer notify the employee of the designation?

2. If notice to the employee is required must it come prior to the commencement of the designated period or may the employer *ex post facto* make a "designation" which *nunc pro tunc* changes the legal condition of an unnotified employee from *unemployed,* as he was and understood he was, with all the personal and legal requirements that involves, to being remunerated because "paid * * * for a vacation or a holiday" and not unem-

ployed and not required to stand in line to register at the Employment Security Office, etc.?

3. If the employee must receive prior notification, what form must that notice take? Must there be oral or written individual notice to each employee or is a general notice posted at various locations in the plant sufficient? Must the notice specify the precise dates of the period for which each individual's vacation pay will be allocated or is it enough simply to provide that any vacation credit due will be applied at the time of layoff?

4. What has been the practice in this state with regard to notifying an employee that a portion of his vacation pay has been allocated to the layoff period? Do employers usually notify the about-to-be laid off workers or is it the custom that the MESC, upon being informed by the employer, will notify the employee that he is ineligible for a specified period?

It is hoped that by building a more complete record and by responding to the questions set forth above the parties will assist this Court in reaching the correct result on this difficult, yet important issue.

### V —"Pro-Rata Vacation Allowance" at Time of Layoff is not "Termination Allowance"

As mentioned above the allocation originated from two sources: accrued unused 1969 vacation pay and accelerated payment under § 7(b) of the LTV-UAW contract of 1970 vacation credits at the time of layoff. We now turn our inquiry to the second of these two sources.

Section 7(b) of the LTV-UAW agreement provides in pertinent part:

"Employees laid off by the Company because of lack
of work or an employee inducted into Military Service
under the Selective Service Act, as amended, and who
have the required service shall receive a pro-rata vaca-
tion allowance at the time of termination based upon 1/
12 of the vacation pay for which he is eligible for each
month and major fraction of the month from his last
anniversary date to the date of termination provided
that he has worked at least 80% of the regularly
scheduled working hours of the plant between his last
anniversary date and his termination date."

Since the contract expressly provides that
amounts shall be allocated at the time of layoff,
there is no problem with regard to prior notice to
the employee as was the case with the 1969 ac-
crued vacation time where the designation was not
provided by contract.

The issue with regard to the 1970 vacation
credits is whether they may be considered "remu-
neration".

Section 48 of the MESA contains a proviso
which sets forth a category of payments received
by the employee which are not to be treated as
"remuneration". This portion of § 48 reads:

"payments in the form of termination, separation,
severance or dismissal allowances, and bonuses, shall
not be deemed wages or remuneration within the mean-
ing of this section."

The treatment of plaintiffs' receipt of a "pro-rata
vacation allowance at the time of termination"
pursuant to § 7(b) of the LTV-UAW agreement as
disqualifying vacation pay by the MESC raises the
question whether under § 48 that allowance is a
"termination * * * allowance" or disqualifying
vacation pay.

The term "pro-rata vacation allowance at the

time of termination" in § 7(b) at first blush is ambiguous. It seems at one and the same time to refer to a *vacation* allowance" and an "allowance at the time of *termination*". If the latter reference is the predominating purpose intended, then the LTV-UAW agreement could mean the allowance was a § 48 "termination * * * allowance". However, analysis of the other parts of § 7 of the LTV-UAW agreement lead to a contrary conclusion.

To begin with, § 7 is generically entitled "Vacation". Subsection (a) in talking about the general establishment of vacation credit speaks of being "eligible for a vacation and vacation *allowance*". This means that the term "allowance" is used for regular vacation pay and the use of "allowance" in "pro-rata vacation allowance at the time of termination" has no significance in weighting the scales toward § 48 "termination * * * allowance". As a matter of fact the term "allowance" is also used in subsection (c) where it says "[t]he vacation pay *allowance* under this article shall be computed [etc.]. Employees eligible for vacation will receive their vacation pay *allowance* on their anniversary date." In short, the term "allowance" in no way predisposes an interpretation of the statute toward a § 48 "termination * * * allowance".

Comparative analysis of §§ 7(a) and 7(b) indicates that the agreement speaks of vacation pay to an employee regularly employed, of one "at the time of termination" and one "terminated for lack of work and subsequently recalled" in exactly the same way. The emphasis is all on guaranteeing vacation pay in accord with credit earned because of time worked. The system is integral and it is no different "at time of separation" from either regular annual anniversary payments or payments of allowances for those terminated and then recalled.

For these reasons, we are convinced the agreement in § 7(b) is concerned with vacation pay and not § 48 "termination * * * allowances", which, as can be seen for the other listed payments in the proviso, do not refer to vacation pay at all. The proviso refers to "separation severance or dismissal allowances, and bonuses".

## VI —BOYER—JURISDICTIONAL QUESTION

The appeal of James Boyer, one of the six plaintiffs, was dismissed by the Macomb Circuit Court for lack of jurisdiction. As Boyer was a resident of Oakland County which has its own circuit court, such dismissal of the appeal was proper.

Section 38 of the MESA,[9] which sets forth the review procedure from determinations of the appeal board, provides in pertinent part:

*"The circuit court of the county in which the claimant resides,* or, if no claimant is a party to the case, the circuit court of the county in which the employer's principal place of business in Michigan is located, *or in any case the circuit court for the county of Ingham, shall have power to review* questions of fact and law on the record made before the referee and the appeal board." (Emphasis added.)

The language of the statute is unambiguous, and it is clear that under § 38 Boyer should have filed his appeal in either Oakland Circuit Court, the circuit court of the county in which he resided, or the Ingham Circuit Court.

Section 38 is a statutory limit of jurisdiction to certain circuit courts; if an appeal is improperly filed in the wrong court, that court has no option but to dismiss the action for lack of jurisdiction.

---

[9] MCLA 421.38; MSA 17.540.

This principle was set forth in *Peplinski v Employment Security Commission,* 359 Mich 665; 103 NW2d 454 (1960), in which this Court held that where plaintiff was a resident of Macomb County, an appeal to Wayne County Circuit Court was improper under § 38 and dismissal of the appeal was appropriate.

In discussing § 38 Justice TALBOT SMITH, speaking for the Court, said:

"The 'power to review' thus granted is the power to hear and determine. It is language of jurisdiction. * * * Venue is primarily a matter of convenience. Properly construed, and without reference to specific statutory enactments, it 'has nothing whatsoever to do with jurisdiction—instead it is concerned only with the place of trial of an action within the State.' But here we have express statutory provisions regulating the appeal, namely the procedure, the scope of review, and the courts empowered to hear the same." (Footnotes omitted.) *Peplinski v Employment Security Commission,* 359 Mich 665, 668; 103 NW2d 454 (1960).

Plaintiffs suggest that MCLA 600.1651; MSA 27A.1651 was designed to change the result in *Peplinski* and that dismissal of the appeal is no longer necessary when an action is filed in the wrong circuit court. Section 1651, which is contained in Chapter 16 of the RJA, the chapter concerning venue, provides in full:

"An action brought in a county not designated as a proper county may nevertheless be tried therein, unless a defendant moves for a change of venue within the time and in the manner provided by court rule, in which case the court shall transfer the action to a proper county on such conditions relative to expense and costs as may be provided by court rule. The court of the county to which the transfer is made shall there-

upon have full jurisdiction of the action as though the action had been originally commenced therein."

This argument advanced by plaintiffs, which would require in effect that § 1651 be treated as "a grant of jurisdiction enabling all circuit courts to hear cases in which the Legislature has elsewhere limited jurisdiction to other circuits" was rejected in *Perez v Chrysler Corp,* 36 Mich App 9, 13–14; 193 NW2d 390 (1971).

In *Peplinski v Employment Security Commission, supra,* at 669, this Court expressed its displeasure with the review procedures under § 38, stating that § 38 "does not commend itself to any modern system of jurisprudence" and observed that the harsh result of dismissal could be avoided by corrective legislation. While we endorse this view expressed in *Peplinski* we are unprepared to treat RJA § 1651, a provision concerned with venue, not jurisdiction, as such corrective legislation which would justify a different result from that which was reached in *Peplinski, i.e.,* dismissal. Section 1651 may be central to basic reforms in venue achieved through the enactment of Chapter 16 of the RJA, but such reform was restricted to venue and this section cannot alter the requirements of § 38, a legislative provision which concerns jurisdiction, not venue.[10]

---

[10] In *Peplinski v Employment Security Commission,* 359 Mich 665, 669; 103 NW2d 454 (1960), this Court cited as an example of corrective legislation Act 8307a of the Texas Revised Civil Statutes which provided in pertinent part:

"In the event such suit is brought in any county other than the county where the injury occurred, the court in which the same is filed shall, upon ascertaining that it does not have *jurisdiction* to render judgment upon the merits, transfer the case to the proper court in the county where the injury occurred." (Emphasis added.)

This provision in the Texas statutes specifically addresses itself to jurisdiction as contrasted to MCLA 600.1651; MSA 27A.1651 which relates only to venue.

Nor does the adoption of Const 1963, art 6, § 1, which pertinently provides that:

"The judicial power of the state is vested exclusively in *one court of justice* which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court * * * " (emphasis added),

require a reversal of the decision reached in *Peplinski.* This contention was rejected in *Perez v Chrysler Corp,* 36 Mich App 9, 12–13; 193 NW2d 390 (1971), in which the Court of Appeals quoted with approval the following analysis and conclusions of Circuit Judge Rashid on this question:

" 'The court cannot agree with this contention as the section [Const 1963, *supra]* relied upon by claimant-appellant must be considered with Section 13 of Article VI of the Michigan Constitution of 1963, which section provides as follows:
" '*The circuit court shall have original jurisdiction in all matters not prohibited by law;* appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law.' (Emphasis in original.)
"Clearly, as contended by appellee-employer herein, the circuit courts do not have jurisdiction *to hear any matter.* The foregoing limitation is imposed thereon. Not only the original jurisdiction but the appellate jurisdiction of the circuit courts are limited by acts of the Legislature. The conclusion is inescapable that section 38 of the act (MCLA § 421.38) is such a limiting statute. Section 38, in the opinion of this court, is a legislative directive indicating that only specified circuit courts in Michigan were empowered to hear appeals from decisions of the appeal board. This conclusion is supported by *Peplinski* * * * . (Emphasis in original.)" (Footnote omitted.)

Plaintiffs suggest that *Peplinski v Employment*

*Security Commission,* 359 Mich 665; 103 NW2d
454 (1960), and *Perez v Chrysler Corp,* 36 Mich
App 9; 193 NW2d 390 (1971), may be distinguished
from the instant case based upon the fact that
those cases, unlike the present action, did not
involve consolidated appeals from consolidated
claims before the hearing referee and the appeal
board. While claimant Boyer, standing alone,
would be in the same legal position as Mrs. Perez,
plaintiffs maintain that because of the consoli-
dated nature of the action, Boyer, a resident of
Oakland County, should be allowed to appeal to
the Macomb Circuit Court along with the other
plaintiffs in the action who are Macomb County
residents. However, the language of § 38 is clear; it
makes no exception for plaintiffs in consolidated
actions. The plaintiffs' distinction between consoli-
dated and unconsolidated actions is meaningless
for the purposes of § 38 jurisdictional require-
ments. The principle set forth in *Peplinski v Em-
ployment Security Commission, supra,* and fol-
lowed in *Perez v Chrysler Corp, supra,* that where
a claimant has improperly filed in the wrong
circuit court, the only course of action open to that
court is to dismiss the appeal for lack of jurisdic-
tion is controlling precedent in this case.

Plaintiffs also contend that GCR 1963, 208.6 was
designed to allow employment security benefit
claimants who reside in a given county to appeal
in that county's circuit court for themselves and
for all others when there is a common question of
law even where some members of the class reside
in other counties. It is unnecessary for us to
answer the question whether a class action in
which some of the class members resided in differ-
ent counties could be maintained in a circuit court
other than Ingham Circuit Court, because we find

plaintiffs in the instant action are not "so numerous as to make it impracticable to bring them all before the court" as to qualify for class action status under GCR 1963, 208.1.

GCR 1963, 208.6 provides in pertinent part:

"Claimants under the Michigan Employment Security Act whose rights to unemployment compensation turn upon the provisions of said act shall, as hereinafter provided, be deemed to constitute a class for appeal to the circuit court under Section 38 of said act and any subsequent appeals."

However, before a properly constituted class can be said to exist GCR 1963, 208.1 requires, *inter alia,* that it must be established that the number of members is "so numerous as to make it impracticable to bring them all before the court". This basic prerequisite to class actions should be read into GCR 1963, 208.6. See *Miller v McClung,* 4 Mich App 714, 722; 145 NW2d 473 (1966).

In the present action an appeal was taken to circuit court by five plaintiffs for themselves and for James Boyer, an employee in their class. Thus, five named plaintiffs were representing a class which including themselves totaled six members. It can hardly be argued that a group of six plaintiffs, five of whom are already in court as named plaintiffs is "so numerous" as to qualify for class action status.

## VII —CONCLUSION

We find that the defendant LTV did have the authority to designate a period during a layoff for allocation of vacation pay for 1969 earned, unused vacation time. However, we leave open the question whether the defendant has made an effective

designation in this case and invite the parties on remand to submit briefs on this issue, addressing themselves, *inter alia,* to the questions set forth in § IV of this opinion.

The 1970 pro-rata vacation allowance at the time of layoff was not a "termination" allowance and may be considered as vacation pay such as that paid at the employee's anniversary.

Boyer's claim could not be joined with those of the other plaintiffs as he resided in a different circuit from them and could not bring his appeal in their circuit.

The claim of Boyer is dismissed.

We remand to the appeal board.

No costs, a public question being involved.

T. G. KAVANAGH, C. J., and LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.