## SMITH v HAYES ALBION

Docket No. 165647. Submitted March 14, 1995, at Detroit. Decided October 20, 1995, at 9:15 A.M. Leave to appeal sought.

Bernard C. Smith and several other employees of Hayes Albion claimed unemployment benefits for a period during which Hayes Albion shut down its plant. The Michigan Employment Security Commission Board of Review decided that payments received by the claimants from Hayes Albion during the shutdown period did not disqualify the claimants for unemployment benefits because the payments were bonuses, not vacation pay that must be deemed remuneration that disqualifies the claimants for unemployment benefits. Hayes Albion appealed in the Clinton Circuit Court, Jack T. Arnold, J., which denied the claimants' motion for summary disposition based on lack of jurisdiction and granted Hayes Albion's motion for a change of venue to the Calhoun Circuit Court. The Calhoun Circuit Court, Conrad J. Sindt, J., reversed the decision of the board of review. The claimants appealed.

The Court of Appeals held:

1. Section 38 of the Michigan Employment Security Act, MCL 421.38; MSA 17.540, as amended after *Peplinski v Employment Security Comm,* 359 Mich 665 (1960), governs venue, not jurisdiction, for judicial review of decisions of the board of review. Accordingly, § 38 does not deprive the Calhoun Circuit Court of jurisdiction on the basis of the erroneous initial filing of the appeal in the Clinton Circuit Court or the expiration of the thirty-day appeal period provided by § 38.

2. If an employee possesses the option to take payment in lieu of vacation, the employer's allocation of funds is treated as a bonus and the employee is eligible for receipt of unemployment benefits. However, if the employer retains sole discretion, allocation of the funds by the employer is treated as payment of disqualifying vacation pay. In this case, the collective bargaining agreement between the claimants and Hayes Albion

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 36, 187, 218.

Right to unemployment compensation as affected by claimant's receipt of holiday pay. 3 ALR4th 557.

authorized Hayes Albion to schedule shutdown periods as vacation and designate payments for shutdown periods as vacation pay. Therefore, the payments received by the claimants were vacation pay that disqualified them for unemployment benefits for the shutdown period.

3. Consideration of the state-law claims raised in this case is not preempted by the Federal Labor-Management Relations Act, 29 USC 185, because resolution of the claims does not require interpretation of the collective bargaining agreement and is consistent with the long history in this state of deciding eligibility for unemployment benefits in conjunction with collective bargaining agreements.

Affirmed.

MARILYN KELLY, P.J., dissenting, stated that § 38 of the Michigan Employment Security Act is a jurisdictional statute and that neither the Clinton Circuit Court nor the Calhoun Circuit Court had jurisdiction under § 38. The case should have been dismissed.

1. UNEMPLOYMENT COMPENSATION — MICHIGAN EMPLOYMENT SECURITY COMMISSION BOARD OF REVIEW — JUDICIAL REVIEW — VENUE.

Section 38 of the Michigan Employment Security Act governs venue, not jurisdiction, for judicial review of decisions of a hearing referee or the board of review of the Michigan Employment Security Commission; a circuit court in which venue of a proceeding for judicial review is improper has jurisdiction to change venue to a circuit court in which venue is proper (MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — ELIGIBILITY — VACATION PAY.

Payments made by an employer to an employee in lieu of vacation constitute vacation pay that disqualifies the employee for unemployment benefits where such payments are made at the sole discretion of the employer (MCL 421.48[2]; MSA 17.552[2]).

*Jordan Rossen,* General Counsel, and *Richard W. McHugh,* Associate General Counsel, International Union, UAW, for the claimants.

*Berman, Berkley & Lasky* (by *Daniel T. Berkley*), and *Finkel, Whitefield & Selik, P.C.* (by *Robert J. Finkel*), for Hayes Albion.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, and *Dennis J. Grifka,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: MARILYN KELLY, P.J., and TAYLOR and MARKEY, JJ.

TAYLOR, J. Claimants appeal as of right the circuit court order reversing the decision of the Michigan Employment Security Commission Board of Review. Claimants also challenge the order granting change of venue and denying their motion to dismiss or motion for summary disposition. Respondent asserts on appeal that this entire matter is preempted by federal law, § 301 of the Labor-Management Relations Act, 29 USC 185. We affirm.

At issue in this appeal is whether claimants' vacation pay disqualified them for unemployment benefits during respondent's two-week shutdown. The underlying facts of this case are undisputed. Claimants are members of the United Auto Workers employed by Hayes Albion. For the period relevant to this appeal, claimants were covered by a collective bargaining agreement with Hayes Albion that took effect May 20, 1985. This collective bargaining agreement provided in pertinent part:

*90.0 Vacation Allowance*

All employees who are covered by this Agreement who will be on the seniority list as of June 1, 1985 or December 31, 1985 and each June 1st or December 31st of each subsequent calendar year during the term of this Agreement shall be entitled to a vacation or pay in lieu of vacation based on the previous year's gross earnings, excluding vacation pay of the previous year, in accordance with the following schedule:

| Years of Seniority | % of Pay | Vacation |
|---|---|---|
| One but less than three | 4% | 2 weeks |
| Three but less than five | 5% | 2 weeks |
| Five but less than ten | 6% | 3 weeks |
| Ten but less than fifteen | 7% | 3 weeks |
| Fifteen but less than twenty | 8% | 4 weeks |
| Twenty or more | 9% | 4 weeks |

a. The spouse of an employee who dies will receive the vacation payment due the employee at the time of the employee's death.

b. Employees who have five or more years of seniority as of the current vacation date will be allowed to receive pay for the amount of vacation to which the employee is entitled. Vacation pay for such employees will be available on February 15th.

c. Employees retiring after 1/1/86 will receive payment of all vacation pay due as of their retirement date.

In short, ¶ 90.0 provides that employees are entitled to vacation or pay in lieu of vacation based on the previous year's gross earnings. The number of weeks of vacation depends on the employee's years of seniority. This subsection also provides that vacation pay will be available on February 15 of each year.

The agreement further provides:

*91.0 Scheduled Vacation Week*

Vacation pay will be available at the end of the week immediately preceding a scheduled vacation, except as outlined in 90.0 above, or employees required to work during the Company's scheduled vacation may have the option of receiving their check at a later date of their choice. Any employee who prefers a definite date for his vacation or part of his vacation shall notify the Company in writing, giving the time he prefers for his vacation prior to June 15. This request will be approved by

the employee's Supervisor. Final determination
will be made by the Personnel Department. The
Company may, however, schedule all vacations
during a time the plant is shut down. Notice of
such scheduling shall be posted prior to June 15.
Vacations are to be taken in the calendar year in
which the employee qualifies and shall not be
cumulative from year to year except that if the
employee's approved vacation is cancelled at Com-
pany request, it may extend into the next calendar
year.

Pursuant to ¶ 91.0, respondent has the right to
schedule all vacations during the time the plant is
shut down and notice of the shutdown will be
posted before June 15 of each year.

Hayes Albion scheduled a two-week plant shut-
down for June 30, 1986, through July 11, 1986,
and posted notices of this shutdown on June 9,
1986, pursuant to the requirements of the collec-
tive bargaining agreement. The notice indicated
that earned vacation time and pay would be allo-
cated to the shutdown period, and that the alloca-
tion of the vacation time may render the employ-
ees ineligible for unemployment benefits. Several
Hayes Albion employees filed claims for unemploy-
ment benefits for this two-week period, which
claims were either denied or never received, and
eventually the parties agreed to consolidate all the
claims in the present case.

After a hearing before a referee, in which the
referee found that claimants were not entitled to
unemployment benefits because the collective bar-
gaining agreement gave respondent the right to
allocate vacation pay to a specific period, this
matter was appealed to the board. The board
found that, because the claimants under the collec-
tive bargaining agreement retained the right to
elect to receive pay in lieu of vacation, the com-

pensation they received on February 15, 1986, and
in June 1986, were bonuses that would not result
in their ineligibility for unemployment benefits
during the period of the shutdown.

The Michigan Employment Security Commission
(MESC) was added as a party appellee by stipulation
on February 21, 1992. Both respondent and the
MESC filed an application for rehearing, which the
board denied in a two-to-one decision. The board
determined that

> [t]he test for distinguishing vacation pay from
> bonuses is whether the employer had the contrac-
> tual authority to designate a period of layoff for
> the allocation of vacation pay. Where the em-
> ployee possesses the option to take payment in lieu
> of vacation, the employer's allocation of payments
> will be treated as a bonus. . . . The determining
> factor is not whether the employer has the sole
> discretion as to *when* the vacation will be taken,
> but rather, whether the employer has the sole
> discretion to determine that vacations will be
> taken instead of payment in lieu of vacation.
> [Emphasis in original.]

The dissenting member of the board opined that,
although the employees had the option to take
payment in lieu of vacation pursuant to ¶ 90.0 of
their contract, that option was extinguished when
the employer scheduled a shutdown and declared
that period to be a period of vacation pursuant to
¶ 91.0 of their contract. In essence, the dissent
concluded that, because the contract in the instant
case did not designate the period for the payment,
the employer could, and did, properly designate
the shutdown as the vacation period. Thus, the
payments made in February and June 1986 be-
came remuneration for the shutdown period in
accordance with MCL 421.48(2); MSA 17.552(2).

Respondent appealed the board's decision to the circuit court, but erroneously filed its appeal in Clinton County rather than Calhoun County. To correct this, respondent filed a motion to change venue, and claimants filed a motion to dismiss or for summary disposition for lack of jurisdiction. The Clinton Circuit Court granted respondent's motion to change venue and denied claimants' motion to dismiss, thus transferring the case to Calhoun County.

The Calhoun Circuit Court conducted a hearing regarding respondent's appeal from the board's decision, finding that footnote 8 in *Brown v LTV Aerospace Corp*, 394 Mich 702, 710; 232 NW2d 656 (1975), accurately stated the law in this area:

> [I]f the employee possesses the option to take payment in lieu of vacations, then the employer's allocation of funds will be treated as a bonus and the employee is eligible for receipt of unemployment compensation benefits. However, if the employer retains sole discretion, then allocation by the employer will be treated as disqualifying vacation pay if the other requirements of [MCL 421.48; MSA 17.552] are met.

Applying this law, the court found that the contract language contained in ¶ 91.0 provided the authority to the employer contemplated in the *Brown* case. Accordingly, because the contract authorized respondent to allocate vacation payments to the shutdown period, the court reversed the decision of the board.

As an initial matter, claimants argue that the trial court lacked jurisdiction because the appeal of the board's decision was filed in the Clinton Circuit Court and the change of venue was ordered after the thirty-day jurisdiction period, contrary to MCL 421.38; MSA 17.540. We disagree.

MCL 421.38; MSA 17.540 is a venue statute, not a jurisdictional statute. Before its amendment in 1975, § 38 expressly dealt with jurisdiction. *Peplinski v Employment Security Comm,* 359 Mich 665, 668; 103 NW2d 454 (1960). However, the *Peplinski* Court expressed its displeasure with the review procedures under § 38 and suggested that corrective legislation would be appropriate to avoid the harsh result of dismissal due to filing in the wrong court. *Id.* at 669; *Brown, supra* at 719. In 1975, the Legislature amended the statute, removing the phrase "shall have power to review" and replacing it with "may review." Our dissenting colleague's position that this amendment merely made "minor grammatical changes" is inconsistent with the rules of statutory construction.

A change in a statutory phrase is presumed to reflect a change in the meaning. *People v Pigula,* 202 Mich App 87, 90; 507 NW2d 810 (1993); *In re Childress Trust,* 194 Mich App 319, 326; 486 NW2d 141 (1992). We presume that the Legislature acts with knowledge of appellate court statutory interpretations. *Gordon Sel-Way, Inc v Spence Bros, Inc,* 438 Mich 488, 505; 475 NW2d 704 (1991). Given the *Peplinski* Court's focus on the phrase "power to review," which it held to be language of jurisdiction, the Legislature's deletion of that phrase in the 1975 amendment indicates its intent to remove the jurisdictional aspect of § 38 relating to filing in the wrong court. We further note here that the dissent's reliance on *Gunderson v Rose Hill Realty,* 136 Mich App 559; 357 NW2d 718 (1984), is misplaced. The dissent cites *Gunderson* for the holding that "the language of § 38 was jurisdictional in nature." This is incorrect because the holding in *Gunderson* relates only to the time limits provided for in § 38. The Court held, unremarkably, that failure to file within the allowed

time is jurisdictional. The *Gunderson* determination does not address the implications of the place of filing. It is that issue this case addresses and, thus, *Gunderson* is inapposite.

Accordingly, we conclude that the Legislature, mindful of the *Peplinski* Court's suggestion, amended § 38 to correct the perceived harshness by eliminating the words of jurisdiction from the section. Claimants' contention that the trial court lacked jurisdiction is without merit, and § 38 should no longer be construed as a jurisdictional statute.

The substantive issue to be addressed on appeal is whether the February 15, 1986, and June 1986 payments constituted bonuses, or whether the payments were properly allocated to the shutdown period and, thus, constituted vacation pay, making claimants ineligible for unemployment benefits. Resolution of this issue requires careful examination of § 48 of the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.*

MCL 421.48(2); MSA 17.552(2) provides in pertinent part:

> [A]mounts paid to the claimant . . . for a vacation . . . shall be deemed remuneration . . . for the period designated by the contract or . . . by the employing unit.

In this case, ¶ 90.0 of the collective bargaining agreement outlines the method of calculation and eligibility for vacation pay, but does not address the employer's control over when vacation time will be scheduled. Paragraph 91.0, however, does address the employer's control over scheduling vacation time, stating that the company may schedule all vacations during a time the plant is shut down, assuming proper notice is given. Con-

trary to claimants' position, the fact that the vacation time and vacation pay are in separate paragraphs of the contract does not preclude respondent from designating the specific period to which the pay is allocated. Section 48(2) does not require that time and pay provisions be in the same paragraph for an employer to invoke the authority the statute gives it. Accordingly, we agree with the circuit court's conclusion that the board's decision was contrary to law. Both the plain meaning of § 48 and our prior Supreme Court case interpreting it support the circuit court's decision. MCL 421.38(1); MSA 17.540(1); *Brown, supra.*

Finally, we reject respondent's assertion that claimants' action is preempted by § 301 of the Labor-Management Relations Act, 29 USC 185. Pursuant to *Betty v Brooks & Perkins,* 446 Mich 270, 279-280; 521 NW2d 518 (1994), we conclude that this matter is not preempted inasmuch as resolution of the claim does not require an interpretation of the collective bargaining agreement. *Id.* Further, we note that this state has a long history of deciding the eligibility of employees to collect unemployment benefits in conjunction with their collective bargaining agreements. See, e.g., *Brown, supra; Renown Stove Co v Unemployment Compensation Comm,* 328 Mich 436; 44 NW2d 1 (1950); *Hubbard v Unemployment Compensation Comm,* 328 Mich 444; 44 NW2d 4 (1950). These cases are, of course, consistent with *Betty, supra.* Therefore, we hold that § 301 does not preempt claimants' state-law claims, and the MESC and our state courts had jurisdiction to determine the issues presented.

Affirmed.

MARKEY, J., concurred.

MARILYN KELLY, P.J. *(dissenting)*. I respectfully dissent. I agree with the majority that claimants' action is not preempted by § 301 of the Labor-Management Relations Act, 29 USC 185. *Betty v Brooks & Perkins,* 446 Mich 270, 279-280; 521 NW2d 518 (1994).

However, I disagree with the conclusion that the Calhoun Circuit Court had jurisdiction over this matter. Consequently, I believe that there is no need to reach the question of contract interpretation. The decision of the Clinton Circuit Court should be reversed, the case dismissed based on the court's lack of jurisdiction and the decision of the Board of Review reinstated.

It is well established that general statutory and court rule provisions concerning venue and jurisdiction have no application to the judicial review of decisions of the Board of Review. Rather, § 38 of the Michigan Employment Security Act (MESA) controls. MCL 421.38; MSA 17.540. It vests specific circuit courts of the state with exclusive jurisdiction to review the board's decisions on unemployment compensation benefits. *Peplinski v Employment Security Comm,* 359 Mich 665, 668; 103 NW2d 454 (1960).

In 1960, our Supreme Court lamented that, as the MESA contains no provision for change of venue, a suit brought in the wrong court must be dismissed for want of jurisdiction. It pointed out that the state of Texas passed curative legislation to provide for changes of venue in such cases by writing into its statute:

> In the event such suit is brought in any county other than in the county where the injury occurred, the court in which the same is filed shall, upon ascertaining that it does not have jurisdiction to render judgment upon the merits, transfer

the case to the proper court in the county where
the injury occurred. [*Peplinski, supra* at 669.]

In 1975, the Michigan Legislature amended § 38
in 1975 PA 110. As claimants and the Michigan
Employment Security Commission pointed out in
their briefs, the legislative history of 1975 PA 110
gives no indication that the Legislature intended
any substantive change in § 38. The accompanying
"Historical Note" of the statute at MCL 421.38;
MSA 17.540 states:  ·

> The 1975 amendment made minor grammatical
> changes throughout the section (38) and substi-
> tuted "20" for "15" in the second sentence.

Also, the House legislative analyses make no claim
that the 1975 amendments change § 38 from a
jurisdictional grant to a venue provision. A well-
known commentary on the Michigan Court Rules
published in 1992 states that the provisions of § 38
"are jurisdictional and must be complied with." 6
Martin, Dean & Webster, Michigan Court Rules
Practice, p 91.

In 1984, our Court found that the language of
§ 38 was jurisdictional in nature. Consequently, we
refused to allow the claimant who disregarded it to
file a delayed appeal. *Gunderson v Rose Hill
Realty,* 136 Mich App 559; 357 NW2d 718 (1984).
The language interpreted there was the present
language of § 38.

I see no legal foundation for the majority's
finding that the Legislature "took the *Peplinski*
Court's suggestion" and amended § 38 in 1975 to
provide for changes in venue. The amendment
referred to changed "the circuit court for the
county of Ingham shall have power to review
questions of law and fact" to "the circuit court for

the county of Ingham may review questions of law and fact." If the Legislature had intended to amend § 38 to permit changes in venue, it would have done so in clear, unambiguous language such as that used in Texas.

The case should be dismissed, as neither the Clinton nor the Calhoun Circuit Court met the jurisdictional requirement of § 38 of the MESA.