MALONE *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—VACATION—DISCRETION OF EM-
PLOYER—INVOLUNTARY UNEMPLOYMENT.
     A collective bargaining agreement whereby the employer was
     given the discretion to select the time for vacation made the
     unemployment resulting from vacation involuntary under the
     employment security act (CLS 1954, § 421.48).

2. STATUTES—CONSTRUCTION OF LATER AMENDMENTS.
     A later and more specific amendment of a statute takes precedence
     over an earlier and more general provision.

3. UNEMPLOYMENT COMPENSATION—VACATION.
     Sums paid employees as vacation pay for 2-week period selected
     by the employer pursuant to collective bargaining agreement
     constituted remuneration for such period payable for other
     purposes than loss of full-time employment, hence, such em-
     ployees who performed no services for the employer during
     such period and were unemployed for months before as well as
     after such period were also unemployed for such "vacation"
     period and entitled to 1/2 usual rate of unemployment com-
     pensation benefits, as provided by statute then in effect (CLS
     1954, § 421.48).

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 50 Am Jur, Statutes § 467 *et seq.*
[3] 48 Am Jur, Social Security, Unemployment Insurance and Re-
   tirement Funds § 34 *et seq.*

4. COSTS—PUBLIC QUESTION—UNEMPLOYMENT COMPENSATION—CON-
   STRUCTION OF STATUTES.

   No costs are allowed in proceeding to recover unemployment
   compensation benefits, where construction of amendment to the
   employment security act presented a public question (CLS
   1954, § 421.48).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Wayne; Beers (Henry L.), J., presiding. Submitted January 14, 1958. (Docket No. 43, Calendar No. 47,374.) Decided June 11, 1958.

Certiorari by Betty Malone and others against the Appeal Board of the Michigan Employment Security Commission, the Commission and Champion Spark Plug Company to establish right to unemployment compensation benefits. From an order reversing the Appeal Board and finding plaintiff entitled to benefits, defendant Champion Spark Plug Company appeals. Affirmed.

*Zwerdling & Zwerdling,* for plaintiffs.

*Clark, Klein, Brucker & Waples,* for defendant Champion Spark Plug Company.

EDWARDS, J. A manufacturing concern, Champion Spark Plug Company, laid off a considerable number of employees, including all of the plaintiffs in this case, in the spring of 1954. Plaintiffs then sought and, except for a period of 2 weeks hereinafter discussed, received unemployment compensation until called back to work in the fall of 1954.

The exception which occasions this appeal concerns the weeks ending July 31st and August 7th which the company determined to be a vacation period and during which it paid these plaintiffs various sums called for by its contract with the union.

A referee who heard plaintiffs' claims for unemployment compensation as to these 2 weeks held that plaintiffs whose vacation pay did not equal the unemployment compensation rate otherwise due were eligible for unemployment compensation, reduced according to statutory formula to 1/2 the usual rate. The appeal board of the Michigan employment security commission reversed the referee's decision, holding that under Michigan case precedent no compensation was payable. On appeal to the circuit court in the nature of certiorari, the judge reversed the appeal board and reinstated the decision of the referee, and the company brings this appeal to us.

Judge Beers recited the facts concisely in his opinion and we adopt his statement:

"The Champion Spark Plug Company, a large industrial concern, entered into a labor contract with Local Union No. 272 of the United Automobile, Aircraft, and Agricultural Implement Workers of America, C.I.O. This labor contract, among many other provisions, provided for a money payment to employees of the company termed vacation pay. The contract specifically provides:

" 'Section 5. Employees on the company's rolls as of May 31st of each year who have fulfilled their probationary period will be granted vacations and pay as follows: Normally the plant will be shut down 2 weeks each year for vacation sometime during July or August at the company's discretion. During such shutdowns certain employees may be required and they normally will take their vacations at other times.'

"The contract then goes on to specify that the amount of vacation pay to be paid to each employee shall be determined by the length of time of service to the company and provides a schedule for such determination. It will be noted here that whether the plant actually shuts down and terminates operations for any vacation period is left wholly in the discre-

tion of the company, and under this contract if the company did not shut down, the employees would be entitled to a certain amount of money which would be termed vacation pay whether they were actually on vacation or not.    *    *    *

"In the early part of the year 1954, the company made a general layoff of certain employees who are involved in the present litigation.   These employees, it is undisputed upon the record, became eligible to receive benefits under the statute.   In July and August of the year 1954, the company, in compliance with what it conceived to be the terms of its employment contract, and while these employees were unemployed by it, gave notice to its unemployed personnel that the weeks ending July 31st and August 7th, 1954, would be determined a vacation period, and it paid to the unemployed personnel the amounts of money designated as vacation pay and determined by the provisions of the aforesaid employment contract.   The employment security commission thereupon removed these unemployed people from the number receiving compensation benefits under the statute for the period of the above-mentioned 2 weeks on the theory that for this vacation period they were employed and ineligible to receive the aforesaid employment benefits and the present suits were then commenced by the employees and their representatives for the purpose of securing to the employees the payment of compensation benefits for the 2-weeks period mentioned.   A hearing was had first before a referee of the employment security commission in which the referee made a finding that the amount of money received by the employees as vacation pay was remuneration within the meaning of the Michigan employment security statute and computed the amount of income to each individual employee for the 2 weeks.   He then allowed this amount as income received and computed the benefits in accordance with the provision of the statute, the amount of income for each week thus being determined to be less than the amount called for in the

statute to be paid to a beneficiary, he allowed each employee 1/2 of the regular allowance, which provision is, of course, in accordance with the statute. Appeal was then taken from the decision of the referee to the appeal board of the employment security commission. The appeal board heard the matter and rendered a majority decision holding that the employees of the company were actually employed and ineligible to receive any compensation under the statute for the 2 weeks I have mentioned. From this decision of the appeal board, this appeal by certiorari is taken."

We are confronted here by the relatively simple problem of construing the 1951 amendments to sections 29 and 48 of the employment security act which pertain to vacations (PA 1951, No 251, immediate effect June 17, 1951 [CLS 1952, §§ 421.29, 421.48 (Stat Ann 1951 Cum Supp §§ 17.531, 17.552)]).

Prior to the above date the employment security act (then known as Michigan unemployment compensation act) contained a specific provision in its disqualification section applicable to vacations. This provision read:

"(1) An individual shall be disqualified for benefits    *    *    *

"(d) For any week with respect to which he is receiving or has received payments in the form of
*  *  *

"(2) Vacation with pay." CL 1948, § 421.29 (Stat Ann 1950 Rev § 17.531).

Basing its action upon this language, this Court denied claims for unemployment compensation in a case which is factually nearly identical with our current case. *Renown Stove Co.* v. *Unemployment Compensation Commission,* 328 Mich 436.

The *Renown Case* was decided September 11, 1950. The following year the legislature repealed the vacation disqualification section quoted above

(Section 29 [1] [d] [2] ).  At the same time it added to section 48 of the act the following self-explanatory language:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate."  CLS 1952, § 421.48 (Stat Ann 1951 Cum Supp § 17.552).

The amendment then went on to spell out the purpose of the legislature to have vacation pay (when, as noted above, less than weekly benefit rate) considered as "remuneration" for the purpose of computing partial unemployment benefits under section 27(c).[*]

The section as applicable in the summer of 1954 was as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate: Provided, That any loss of remuneration incurred by an individual during any week resulting from any cause other than the failure of his employing unit to furnish full-time, regular employment shall be included as remuneration earned for purposes of this section and of subsection (c) of section 27 of this act: Provided further, That the total amount of remuneration thus lost shall be determined in such manner as the commission shall by regulation prescribe. For the purposes of this act, an individual's weekly benefit rate shall mean the weekly benefit rate shown

---

[*] See CLS 1952, § 421.27 (Stat Ann 1951 Cum Supp § 17.529). This section, setting up payment schedule, has been frequently amended.—REPORTER.

in the table in section 27(b), which is applicable to the individual.

"*All amounts paid to or due to a claimant from an employing unit or former employing unit for vacation or a holiday, or in the form of retroactive pay, or in lieu of notice, shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27(c)*, for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit: Provided, however, That payments in the form of termination, separation, severance or dismissal allowances, and bonuses, shall not be deemed wages or remuneration within the meaning of this section." (Italics supplied.)   CLS 1954, § 421.48.*

The amendments recited above were in effect at the time of origin of the vacation dispute decided by this Court in *I. M. Dach Underwear Co.* v. *Employment Security Commission,* 347 Mich 465. The case was, however, decided upon different factual grounds. The plant shut down in *Dach* only for the vacation period. The vacation period was specifically set by union-management agreement. The majority of this Court there held that the period of unemployment was not "involuntary" since the collective bargaining agreement was held to have determined the "vacation" week. The division in this Court recorded in *Dach* continues (See Mr. Justice SMITH's dissent in which the writer joined, *Dach, supra,* p 480), but this case presents a different situation.

In our current case, plaintiffs were unemployed for months preceding and following the 2 "vacation"

* Note subsequent amendment CLS 1956, § 421.48 (Stat Ann 1957 Cum Supp § 17.552).

weeks.   The collective bargaining agreement made the time for vacations discretionary with the company. We do not believe that *Dach* is controlling on the instant facts.

In deciding the instant case, the circuit judge cited the 1951 amendments dealing with vacations to which we have already referred. He added:

"It seems to me that it must logically follow that this money having been paid to the employees for vacation must be determined to be remuneration under the statute. It is quite obvious to me that the legislative intent in placing this provision in the statute was to reduce the amount of unemployment compensation to be paid and to equalize the income of beneficiaries under the statute, the statute itself being a relief measure to guard against the hardships of widespread unemployment."

Appellants, however, in this appeal present to us 5 questions, all bearing upon the effect of language in the preamble to the employment security act:

"The legislature acting in the exercise of the police power of the State declares that the public policy of the State is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. *Involuntary unemployment* is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this State." (Emphasis supplied.)   CL 1948, § 421.2 (Stat Ann 1950 Rev § 17.502).

It seems obvious to us that the 1951 amendments acted to spell out the legislative definition of unemployment in a specific fashion pertaining to vacations which we cannot properly ignore.

It is a sound principle of statutory construction that the later and more specific amendment takes precedence over an earlier and more general provision. *Crane* v. *Reeder,* 22 Mich 322; *Edwards* v. *Auditor General,* 161 Mich 639; *Reed* v. *Secretary of State,* 327 Mich 108; 50 Am Jur, Statutes, § 367.

In our view, our current case presents the very situation for which the legislative amendments of 1951 were specifically intended as remedy.

Under what we have written, there is no necessity again to review cases from outside this jurisdiction which illustrate other State courts' views on whether or not vacations may be termed involuntary unemployment for purposes of their specific statutes.

See majority and dissenting opinions, *Dach, supra.*

In Michigan, this problem has been specifically addressed by the legislature and, as to our current case, plainly answered in the 1951 amendments. In such a situation, the courts need only to give effect to the legislative intent. *City of Grand Rapids* v. *Crocker,* 219 Mich 178; *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282 (98 ALR 827); *Geraldine* v. *Miller,* 322 Mich 85.

The referee and the circuit judge gave the amendments their intended effect.

Affirmed. No costs, a public question being involved.

SMITH, BLACK, and VOELKER, JJ., concurred with EDWARDS, J.

CARR, J. (*dissenting*). This case involves the interpretation and application of certain provisions of the Michigan employment security act.* The material facts are not in dispute. In the early part of

---

* PA 1936 (Ex Sess), No 1, as amended (CL 1948 and CLS 1954, § 421.1 *et seq.* [Stat Ann 1950 Rev and Stat Ann 1953 Cum Supp § 17.501 *et seq.,* as amended]).

1954 the plaintiffs were employees of the defendant Champion Spark Plug Company. Because of lack of work they were laid off for an unspecified period. Prior thereto, and under date of August 22, 1951, a contract had been entered into between Local No. 272 UAW-CIO, representing the employees, and the said employer, which provided for a vacation period each year during July or August, the exact date to be fixed by the company. All employees who had fulfilled their probationary periods were entitled to vacation pay based on the length of time that they had been on the company's rolls.

On April 19, 1954, the employer caused to be posted on the bulletin board in its plant a notice that the company, ceramic division, would be closed for vacation from July 25th through August 8, 1954. Notice of such vacation was given to the Michigan employment security commission, together with a list of claimants entitled to vacation pay. In accordance with the procedure contemplated by the contract between the union and the employer, employees entitled thereto received vacation pay for the period specified in the published notice. However, they were not called back to their jobs until later in the summer or early fall, and they filed claims for unemployment compensation including the designated vacation period.

A hearing was had before a referee of the employment security commission, who held that plaintiffs were entitled to compensation for the period from July 25th through August 8th, allowance being made for the vacation pay received. The employment security appeal board reversed the decision of the referee, holding that plaintiffs were not entitled to unemployment compensation during the vacation period. The circuit judge who reviewed the proceeding agreed with the referee, and the case is now before us on appeal.

As indicated at the outset, the determination of the question here involved depends on the interpretation given to pertinent provisions of the employment security act. The Court necessarily must be governed by the legislative intent as expressed therein. The object of said act is clearly stated. Its basic purpose, as set forth in the title as originally enacted, and as amended, was "to provide for the protection of the people of this State from the hazards of unemployment." We find also in the title reference to the establishment of an "unemployment compensation fund." Under the mandate of article 5, § 21, of the State Constitution (1908), requiring that the object of a law shall be expressed in its title, the provisions in the body of the statute must be construed in accordance with the purpose indicated. Such was, and is, the clearly expressed intention of the legislature. The designation of the short title as the "Michigan employment security act" in section 1 (CLS 1956, § 421.1 [Stat Ann 1957 Cum Supp § 17.501]) is wholly consistent with the title, as is the declaration of policy in section 2 (CL 1948, § 421.2 [Stat Ann 1950 Rev § 17.502]), as follows:

"Declaration of policy. The legislature acting in the exercise of the police power of the State declares that the public policy of the State is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this State. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for

periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this State."

It will be noted that in the foregoing statement reference is made to "involuntary unemployment" and to the fact that social security requires protection against such hazard.  See *Dwyer* v. *Unemployment Compensation Commission,* 321 Mich 178, where it was held:

"The purpose of the unemployment compensation act is to provide protection against the evils incident to involuntary unemployment so as to foster social and economic security for the people of the State by providing benefits to those genuinely attached to the labor market who are unemployed through no fault of their own and who are willing, anxious, and ready to obtain employment so that they may support themselves and their families (PA 1936 [Ex Sess], No 1, as amended)."—Syllabus 4.

Of like import is *Renown Stove Company* v. *Unemployment Compensation Commission,* 328 Mich 436.    The question was also considered at some length in *I. M. Dach Underwear Company* v. *Employment Security Commission,* 347 Mich 465, where attention was called to decisions from other States having statutory provisions analogous to those of Michigan.

At issue in the instant case are the provisions of section 48 of the employment security act, which, as amended by PA 1954, No 197 (CLS 1954, § 421.48), reads as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no

services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate: Provided, That any loss of remuneration incurred by an individual during any week resulting from any cause other than the failure of his employing unit to furnish full-time, regular employment shall be included as remuneration earned for purposes of this section and of subsection (c) of section 27 of this act: Provided further, That the total amount of remuneration thus lost shall be determined in such manner as the commission shall by regulation prescribe. For the purposes of this act, an individual's weekly benefit rate shall mean the weekly benefit rate shown in the table in section 27 (b), which is applicable to the individual.

"All amounts paid to or due to a claimant from an employing unit or former employing unit for a vacation or a holiday, or in the form of retroactive pay, or in lieu of notice, shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27 (c), for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit: Provided, however, That payments in the form of termination, separation, severance or dismissal allowances, and bonuses, shall not be deemed wages or remuneration within the meaning of this section.

"An individual shall not be deemed to be unemployed during any leave of absence from work granted by an employer either at the request of the individual or pursuant to an agreement with his duly authorized bargaining agent, or in accordance with law."

Said amendment was ordered to take immediate effect, and was approved May 7, 1954. In conse-

quence it was operative during the period in question here. The last sentence was added by the amendment to the section as previously amended, the language used suggesting that its purpose was to clarify any ambiguity existing in said section, or to modify prior provisions. It may not be assumed that the addition was made as a mere idle gesture, and force and effect must be given thereto in accordance with its unequivocal language. The reference to absence from work pursuant to an agreement with the duly authorized bargaining agent of the employee is significant. Here is a clear-cut recognition of the authority of the bargaining agent to bind those whom it represents.

It is a matter of common knowledge that provisions for vacations and vacation pay are ordinary matters of contract where the representative of the employees deals in their behalf with the employer. In accordance with such provisions the employees are granted a leave of absence from work subject to any agreement as to compensation during the period of such leave. The language employed by the legislature in the 1954 addition to the statute is clearly broad enough to include vacations. Had it been the intention to exclude them from the operation of the provision, it is fair to assume that such an exception would have been expressly made. Inasmuch as the language used covered vacation periods, an express inclusion would have been mere surplusage. We must assume that the legislature meant what it said and that, in consequence, an individual on vacation from his employment is not "unemployed" within the meaning of the statute.

If there is deemed to be a conflict between the provision added to the section by the legislature at the 1954 session and prior provisions thereof, such added provision must prevail under established rules of statutory construction. However, such a

conflict does not clearly appear. The prior enacted provisions refer to vacation pay, holiday pay, retroactive pay, and payments in lieu of notice. Such payments are to be deemed remuneration in determining whether an individual is unemployed. Under the statute, at least after the 1954 amendment, one on vacation was not unemployed, and the acceptance of such pay indicated his acquiescence in his then status. The other payments referred to are different in kind. Combining the provisions in one sentence may have resulted in possible confusion which the legislature sought to eliminate by the provision added at the end of the section. In any event it must be assumed that the legislature in making the amendment intended to accomplish the purpose indicated by the language employed. The Court is not at liberty to disregard the action of the legislature.

Under the holding of the circuit judge the vacation pay received by plaintiffs would constitute merely a partial payment of unemployment compensation. It is scarcely conceivable, however, that any such result was intended by the contract between the bargaining agent and the employer, nor is it consistent with the statute, especially in view of the fact that those receiving vacation pay pursuant to the contract are not to be regarded as unemployed. Neither does the fact that plaintiffs were laid off both before and after the vacation period alter the situation in the instant case. It will be recalled that notice as to the time of the regular vacation was given on April 19, 1954. That there was any reason to believe at that time that plaintiffs would not be recalled to their employment prior to the date fixed does not appear. However, when they accepted the checks for vacation pay they acknowledged their status under the contract made in their behalf, and as to the period of the vacation they must be regarded as on leave of absence from work. Their

status was in fact altered by virtue of the contract providing for vacations and vacation pay. A different conclusion involves, as before noted, regarding the vacation payments as partial unemployment compensation. Such was not the actual fact, and the situation here is not altered because plaintiffs were laid off "before and after" the vacation period. *Renown Stove Company* v. *Unemployment Compensation Commission, supra,* p 440. The contract still remained in force and effect as the parties recognized by their unequivocal acts.

The appeal board of the employment security commission correctly determined the controversy. Plaintiffs were not entitled to compensation for the vacation period in question on the ground that they were "unemployed" within the meaning of the term as used in the statute. The circuit judge was in error in setting aside the order of the board.

The case should be reversed and remanded with directions to enter an order affirming the action of the appeal board of the Michigan employment security commission. A question of public interest, involving the interpretation of a statute, being involved, no costs are allowed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

KAVANAGH, J., took no part in the decision of this case.