FORD MOTOR COMPANY v JACKSON (ON REHEARING)

CLAIM OF BANIA

CLAIM OF MOHAMMED

Docket Nos. 55100–55105. Argued September 10, 1974 (Calendar No. 5).—Decided December 18, 1975, 395 Mich 578. Rehearing granted 395 Mich 924. Submitted on rehearing January 27, 1976 (Calendar No. 13).—Decided December 30, 1976. Rehearing denied and order modified 400 Mich 953.

Claimants Jan K. Bania and others employed in the Livonia plant of the Ford Motor Company were notified on March 12 and April 29, 1968 that there would be a layoff and vacation shutdown of the plant beginning July 15, 1968. Claimant Bania was laid off beginning July 15 for a period of two weeks. He requested and received one week of vacation beginning July 29. He returned to work on Monday, August 5. Claimant's vacation pay had been received with his last paycheck on July 12. The Employment Security Commission Appeal Board awarded Bania back-to-work benefits.

Claimants Donald W. Jackson, Akil Mohammed, and others employed at Ford's Sterling plant were notified that the plant would be shut down from July 22 through August 9, 1968. Mohammed's last day of work was July 19, 1968 and he returned to work on August 12. He received no vacation pay, and was administratively awarded back-to-work benefits. The Employment Security Commission Appeal Board affirmed the

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 10, 11] 76 Am Jur 2d, Unemployment Compensation §§ 21, 22, 86.

Right to unemployment compensation as affected by vacation or holiday or payment in lieu thereof. 30 ALR2d 366.

[4, 7, 12] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 64.

[5] 59 Am Jur 2d, Parties § 69 et seq.

76 Am Jur 2d, Unemployment Compensation § 38.

Identity or community of interests essential to class or representative suits. 132 ALR 749.

[6, 8] 4 Am Jur 2d, Appeal and Error § 172 et seq.

[8] 20 Am Jur 2d, Courts § 22, 87 et seq.

[9] 76 Am Jur 2d, Unemployment Compensation § 32 et seq.

referee's ruling that Mohammed and other test claimants were entitled to back-to-work benefits.

The Ford Motor Company appealed to Ingham Circuit Court, but prior to that, Mohammed joined with five others in filing a "class action" appeal in Wayne Circuit Court. The Ingham Circuit Court, Donald L. Reisig, J., reversed the award of benefits. Claimants appealed to the Court of Appeals, V. J. Brennan, P. J., and Holbrook and Van Valkenburg, JJ., which reversed the Ingham Circuit Court and dismissed (Docket Nos. 13111–13116). The Ford Motor Company appeals. *Held:*

Justice Coleman, with Justices Fitzgerald and Lindemer concurring, would reverse the decision of the Court of Appeals for the following reasons: A designated paid vacation period cannot be included in a period of unemployment for determining qualification for back-to-work benefits. Claimant Bania's one week of vacation pay is treated as remuneration under the statute; he thus was laid off for two weeks without remuneration. He was not laid off for more than three weeks regardless of his vacation pay; his layoff commenced July 15 and he returned to work exactly three weeks later. He did not qualify for back-to-work benefits. Claimant Mohammed had already been awarded back-to-work benefits and was therefore an improper member of the Wayne class suit seeking back-to-work benefits in that he did not seek relief common to the class and had no standing in such an action; he was not aggrieved. The Ingham Circuit Court was correct in refusing to dismiss the Ford appeal when on its face the claimants' class appeal was invalid because two of the claimants lived out of the Wayne Circuit Court's jurisdiction and the remaining four had no right to appeal because they were not aggrieved parties.

Justice Ryan concurred with Justice Coleman insofar as she holds that the circuit court did not err in refusing on the record before him to grant the claimant's motion to dismiss the Ford appeal. Bania received vacation pay from Ford Motor Company for a work week during his layoff. He was, therefore, no longer "unemployed" by his initial employer within the meaning of the act during the week for which he received vacation pay, was not laid off in excess of three weeks, and was not entitled to back-to-work benefits. Mohammed's last day worked with Ford Motor Company was Friday, July 19, 1968 and he returned to work at Ford Monday, August 12, 1968. He was not entitled to back-to-work benefits because his layoff began when he became "unemployed" within the meaning of the act on July 22, 1968, and he was not laid off by his initial employer in excess of three weeks.

Justice Williams, with Chief Justice Kavanagh concurring, would affirm the decision of the Court of Appeals for the following reasons: Receipt of vacation pay, although it interrupts payment of regular unemployment benefits, does not interrupt a layoff period for determining eligibility for back-to-work benefits. Claimant Bania's layoff period must be measured from the last day of work for determining eligibility for back-to-work benefits; he was unemployed for more than three weeks and is entitled to back-to-work benefits. The Ingham Circuit Court should have granted claimants' motion to dismiss based upon GCR 1963, 116.1(4) because, at the time Ford filed its appeal in the Ingham Circuit Court, an appeal taken from the same appeal board decisions involving the same parties and the same claims was pending in Wayne Circuit Court, and the prior action was not on its face one in which the court had no jurisdiction because the case contained two undecided justiciable questions at the time of the Ingham Circuit Court's refusal to dismiss the second action.

Justice Levin took no part in the decision of this case.

47 Mich App 700; 209 NW2d 794 (1973) reversed.

DECISION OF THE COURT

1. UNEMPLOYMENT COMPENSATION—LAYOFF—UNEMPLOYMENT—VACATION PAY.

An employee who received vacation pay from his employer following two weeks of unemployment and layoff was no longer "unemployed" by his initial employer within the meaning of § 48 of the Employment Security Act as of the beginning of the work week for which vacation pay was received (MCL 421.48; MSA 17.552).

OPINION BY COLEMAN, J.

FITZGERALD and LINDEMER, JJ.

2. UNEMPLOYMENT COMPENSATION—REMUNERATION—VACATION—EMPLOYMENT SECURITY ACT—BACK-TO-WORK BENEFITS—ELIGIBILITY.

*An unemployment compensation claimant who received remuneration for the period of his vacation during a layoff was not "unemployed" in excess of three weeks within the meaning of the Employment Security Act where he received his last paycheck and vacation pay on July 12, was laid off beginning July 15 for a period of two weeks, requested and received one week of vacation beginning July 29, and returned to work August 5; regardless of computation of vacation time, he was not qualified*

*to receive back-to-work benefits under the former statute (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254).*

3. UNEMPLOYMENT COMPENSATION—VACATION PAY—BACK-TO-WORK BENEFITS.

   *A designated paid vacation period cannot be included in a period of unemployment for determining a claimant's qualification for back-to-work benefits under the former statute; vacation pay is considered remuneration in determining whether an employee is unemployed (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254, 421.48).*

4. UNEMPLOYMENT COMPENSATION—APPEAL AND ERROR—CLASS ACTION.

   *A class action appeal from the Employment Security Commission including a successful claim filed in one county before an appeal in another county from the same determination by the unsuccessful employer cannot force dismissal of the second appeal while the first is pending.*

5. PARTIES—CLASS ACTION—COURT RULES—COMMON RELIEF—UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS.

   *The court rules permit a class action only when a common relief is sought and a claimant who had already been awarded back-to-work benefits was an improper member of a class seeking back-to-work benefits in that he did not seek the common relief of the class and had no standing in such an action; he was not aggrieved (GCR 1963, 208.6).*

6. APPEAL AND ERROR—PARTIES.

   *Only a party aggrieved by a decision has a right to appeal from that decision.*

7. UNEMPLOYMENT COMPENSATION—APPEAL AND ERROR.

   *The mere existence of an appeal from the Employment Security Commission pending in one court is not of itself sufficient to abate a second appeal in another court.*

OPINION BY COLEMAN, J.

FITZGERALD, LINDEMER and RYAN, JJ.

8. UNEMPLOYMENT COMPENSATION—APPEAL AND ERROR—PARTIES.

   The Ingham Circuit Court was correct in refusing to dismiss an appeal by an employer from the Employment Security Commission when on its face an appeal filed first in the Wayne Circuit Court including one of the claimants in the employer's appeal

was invalid because two of the claimants lived out of the Wayne Circuit Court's jurisdiction and the remaining four had no right of appeal because they were not aggrieved parties.

OPINION BY RYAN, J.

9. UNEMPLOYMENT COMPENSATION—LAYOFF—BACK-TO-WORK BENEFITS.

*An employee's layoff begins, for purposes of determining his eligibility for back-to-work benefits, when he first becomes "unemployed" within the meaning of § 48 of the Employment Security Act with respect to his initial employer and continues until the employee is no longer "unemployed" with respect to his initial employer (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254; MCL 421.48; MSA 17.552).*

OPINION BY WILLIAMS, J.

KAVANAGH, C. J.

10. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—VACATION PAY—STATUTES.

*Receipt of vacation pay by an employee during a layoff period does not interrupt the layoff for purposes of determining his eligibility for back-to-work benefits under the former statute (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254).*

11. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF—STATUTES.

*An employee's layoff period commences for purposes of determining his eligibility for back-to-work benefits as of the last day worked under the former statute; a person is laid off when his employment terminates with the employer because there is no available work for him (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254).*

12. DISMISSAL AND NONSUIT—APPEAL AND ERROR—PENDENCY OF SAME CLAIM—COURT RULES.

*Refusing to grant a motion to dismiss an appeal in a circuit court from a decision of the Employment Security Commission Appeal Board was erroneous where an appeal from the same decision involving the same parties and the same claims was pending in another circuit court at the time of filing the claim of appeal (GCR 1963, 116.1[4]).*

*Wright Tisdale (Joseph A. O'Reilly* and *Richard A. Fellrath,* of counsel), for plaintiff.

*John A. Fillion* and *Jordan Rossen (Edwin G. Fabré, Leonard R. Page,* and *M. Jay Whitman,* of counsel), for defendants-claimants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Felix E. League,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

COLEMAN, J.

### CLAIM OF BANIA

This is one of a series of test cases in which the Court interprets from varied factual situations the concept of back-to-work pay as provided in the Michigan Employment Security Act (MESA).

The specific question assigned to the claim of Bania against Ford Motor Company (Ford) is:

Does the payment of vacation pay during a period of unemployment commencing with a layoff under the provisions of § 27(c)(2) of MESA have any effect upon the computation of time necessary to qualify for a back-to-work payment?

We find that the designated paid vacation period cannot be calculated in determining qualification for back-to-work pay. Also, in this case claimant was notified well in advance that he would be laid off as of Monday, July 15, 1968, so regardless of the computation of vacation time, he was not laid off in excess of three weeks.

### I. FACTS

Claimant Bania and others in the same plant were notified on March 12 and April 29, 1968 that there would be a layoff and vacation shutdown of

the plant beginning Monday, July 15, 1968. The notice relative to Bania read:

"The VACATION and LAYOFF Schedule shall begin: Week of July 15, 1968 as a LAYOFF. Week of July 22 and 29th as a VACATION SHUTDOWN."

Claimant Bania was laid off beginning July 15 for a period of two weeks. He requested and received one week of vacation beginning July 29. He returned to work on Monday, August 5. Claimant's vacation (full) pay had been received with his last paycheck on July 12. The Michigan Employment Security Appeal Board in addition awarded Bania back-to-work benefits, which decision was reversed by the Ingham Circuit Court.[1] The Court of Appeals in turn reversed the Ingham Circuit Court. 47 Mich App 700; 209 NW2d 794 (1973). Ford now appeals.

## II. MICHIGAN EMPLOYMENT SECURITY ACT

MCLA 421.27(c)(2); MSA 17.529(c)(2):

"When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in full-time work with an employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid, for the most recent week in such period for which benefits are payable or were paid to him or for which he was entitled to credit

---

[1] Bania and other successful claimants were parties to a "class action" appeal in Wayne County. Mohammed was one such claimant and that aspect of the case will be discussed in the "Claim of Mohammed" to follow.

for a waiting week, an amount equal to his currently applicable weekly benefit rate in addition to any benefits otherwise payable or paid to him for such week."

## MCLA 421.48; MSA 17.552:

"All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, and amounts paid in the form of retroactive pay, or in lieu of notice, *shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27(c),* for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit."

## III. VACATION PAY

Ford claims that the Court of Appeals erred because § 27(c)(2) does not provide for back-to-work pay under the stated circumstances. Ford argues that claimant had not had a period of unemployment which commenced with a layoff and which lasted in excess of three consecutive weeks. Bania was on vacation and received vacation pay for one week which was included by claimant in his computation of time.

Claimant Bania argues that layoffs are measured from the last day of work[2] to the first day of return and that he is eligible for back-to-work pay because he was laid off, although not unemployed,

---

[2] The issue of when § 27(c)(2) becomes operational and the computation of time begins is discussed in test case *General Motors Corp v Erves,* 395 Mich 604; 236 NW2d 432 (1975). The application of the *economic impact standard is* here adopted. (The issue of *time* computation when claimant receives on Friday a notice of layoff when the next work day is Monday is irrelevant to this case.)

in excess of three weeks. But this computation included vacation time plus the Saturday and Sunday before the layoff as noticed.

Applying the rationale of test case *General Motors Corp v Erves,* we proceed to an analysis based upon the economic (wage) impact.

Justice WILLIAMS, writing in a related opinion, *Brown v LTV Aerospace Corp,* 394 Mich 702; 232 NW2d 656 (1975), states:

"That the employer may lawfully designate a vacation period during a layoff for the allocation of vacation pay has been settled in this state. See *Malone v Employment Security Commission,* 352 Mich 472; 90 NW2d 468 (1958)."

Of specific relevancy are the parts of § 48 which read:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him."

Claimant's one week of vacation pay is treated as remuneration under § 48, thus leaving him with two weeks of unemployment.[3]

In accordance with *Brown,* claimant Bania lost two weeks of wages and he also was "unemployed" for two weeks. Claimant, however, would have his cake and eat it too. He wishes full pay for the

[3] Our analysis is not novel. It was employed in *Employment Security Commission v Vulcan Forging Co,* 375 Mich 374, 378; 134 NW2d 749 (1965):

"Our conclusion is buttressed by the second paragraph of the amended section which, among other things, provides that vacation pay received for such periods of unemployment is considered remuneration in determining whether an employee is unemployed and in determining the amount of unemployment compensation benefits, under section 27 of the act, to which he is entitled."

week of vacation and also to have that week credited for back-to-work benefits. Such a result would do violence to the intent of the act which speaks throughout to "unemployment". The title declares that it is an act "to provide for the protection of the people of this state from the hazards of unemployment". The declaration of policy speaks solely of "unemployment" *(i.e.,* "Economic insecurity due to unemployment", "Involuntary unemployment", "unemployed worker" etc.) and provides for the systematic setting aside of funds to provide benefits for "periods of unemployment". MCLA 421.2; MSA 17.502.

It is highly unlikely that in this context the Legislature intended a "windfall", as it has been aptly designated.

However, claimant Bania still is not entitled to back-to-work pay regardless of whether one accepts his rationale of this battle of semantics.

Notice well in advance was given to claimant of the layoff beginning Monday, July 15, 1968. Such advance notice was certainly in his best interest. Bania then returned to work in exactly three weeks after July 15. Even if we accepted claimant's argument (which we do not) that he actually was laid off on Friday because he conceivably could have been called in for work during the weekend, claimant fails. His logic is defective on its face. If he were laid off Friday, he would not have been called in for work Saturday or Sunday. If layoff status began on Monday, under his argument he would have been available for week-end work. He is either laid off on Friday or he is not. We find that he was not.

It is a heady experience for any of us to be in a situation of "Heads I win, tails you lose", but if business is to thrive so that jobs will be available,

a sound business and commonsense approach must be applied.

From whatever aspect the circumstances of this case is viewed—whether it be the intent of the act, the application of logic or common sense or a balanced weighing of the common welfare—claimant Bania did not qualify for back-to-work benefits.[4]

The Court of Appeals is reversed.

## CLAIM OF MOHAMMED

The question assigned to this case is:

Can a "class action" appeal including a successful Michigan Employment Security Commission claimant in one county filed before an appeal by the unsuccessful employer in another county, force dismissal of the second appeal while the first is pending?

Under the circumstances of this case, we hold that the Ingham County appeal should not have been dismissed and therefore we reverse the Court of Appeals.

## I. FACTS

Mohammed, a resident of Wayne County, was employed at Ford's Sterling plant when he and others were notified that the plant would be shut down from July 22 through August 9, 1968. Although Mohammed's last day of work was Friday, July 19, 1968, he had received notice that the layoff would begin Monday, July 22. He returned

---

[4] Although $50 is entailed in Bania's claim alone, there are thousands of others in like circumstances, we are informed. Therefore a large amount of monies is involved for corporations, large and small, which have similar claims pending against them.

to work on Monday, August 12.[5] He received no
vacation pay. Nevertheless, he was administra-
tively awarded back-to-work benefits.

The MESC Appeal Board affirmed the referee's
ruling that Mohammed and other test claimants
were entitled to back-to-work benefits. Ford ap-
pealed.

Prior to Ford's appeal to the Ingham Circuit
Court, Mohammed joined with five others[6] in filing
(with later amendment) a "class action" appeal in
Wayne Circuit Court. Of these, two resided in
other counties and four were successful claimants.
Wayne Circuit Judge O'Hair eventually dismissed
the Wayne claims for lack of jurisdiction, adding
that the arguments for "class action" also failed.
The Court of Appeals affirmed the decision and
this Court denied appeal.

The Court of Appeals dismissed the Ingham
appeal on the basis that the Wayne appeal was
still pending.

Other questions arising from the facts of the
Mohammed claim are answered in other test
cases, so we adhere solely to the assigned question
as stated.

## II. ABATEMENT OF APPEALS

The Court of Appeals, in dismissing Ford's Ing-
ham County appeal, cited GCR 1963, 116.1(4):

---

[5] *See General Motors Corp v Erves* for a discussion of time computa-
tion in back-to-work cases.

[6] *See Brown* for the dispositive test case opinion regarding jurisdic-
tion of a circuit court to hear appeals from MESC Appeal Board
decisions.

A seventh claimant, Rivenburgh, in a separate action, was denied
appeal to the Wayne circuit court because he was not a resident of
Wayne County and therefore that court was without jurisdiction. This
Court denied Rivenburgh's application for leave to appeal.

"In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

\* \* \*

"(4) another action is pending between the same parties involving the same claim."

Mohammed, however, had won his case, having benefited from the decision of the appeal board. Claimants had presented various factual situations. Mohammed and three other Wayne residents had prevailed and in appealing had no viable issue in dispute.

GCR 1963, 208.6[7] permits a class action only when "a common relief is sought". The Wayne suit was instituted by claimants seeking back-to-work benefits. But Mohammed already had been awarded back-to-work benefits and therefore was an improper member of the "class" in that he did not seek the "common relief" of the class and had no standing in such an action. He was not aggrieved.

It is a general rule in this state[8] and elsewhere that only a party aggrieved by a decision has a right to appeal from that decision.

In *Whiting v Neuman,* 11 Mich App 201; 160

[7] "Claimants under the Michigan Employment Security Act whose rights to unemployment compensation turn upon the provisions of said act shall, as hereinafter provided, be deemed to constitute a class for appeal to the circuit court under section 38 of said act and any subsequent appeals. Any one or more claimants, as will fairly insure the adequate representation of all, may, on behalf of all, sue or be sued in proceedings under Rule 706 when the character of the rights sought to be enforced for the class is several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

[8] *Also see, In re Critchell Estate,* 361 Mich 432; 105 NW2d 417 (1960); *Groeneveld v Groeneveld,* 3 Mich App 284; 142 NW2d 14 (1966).

NW2d 795 (1968), T. G. KAVANAGH (now Chief Justice of this Court) wrote:

"We also agree that only an aggrieved party may properly seek relief from an appellate court * * * ."

*Whiting* refers with approval to the case of *In re Estate of Trankla*, 321 Mich 478; 32 NW2d 715 (1948), which has been substantially restated in 7A Callaghan's Michigan Pleading & Practice (2d ed), § 54.08.[9]

4 Am Jur 2d, Appeal and Error, §§ 182, 184, 185, concludes that:

"A party who could not benefit from a change in the judgment has no appealable interest.

                    *    *    *

"of course one may not appeal from a judgment, order or decree in his favor by which he is not injuriously affected.

                    *    *    *

"a successful party who has been granted full relief is not entitled to a review of alleged defects in the proceedings on which the judgment is founded * * * ."

It is properly argued by Ford that the mere existence of an appeal pending in one court is not

---

[9] "To be entitled to appeal, in addition to being interested in the subject matter of the controversy, one must also be injuriously affected or aggrieved by the judgment or order. To be aggrieved, the determination must in some substantial manner prejudice him in his rights or adversely affect his legal interests, and a party unquestionably is aggrieved by a judgment or order if it operates on his rights in property or bears directly on his interest, but one is not aggrieved by a mere possibility of injury arising from some unknown and future contingency, and there is a strong presumption against possible future grievance where there is nothing to show any state of things which could give rise to any contingent claim which could be presented against appellant thereafter in connection with the order appealed from."

of itself sufficient to abate a second appeal in another court.[10] The argument of claimants is unreasonable which would require dismissal of the second appeal, then dismissal of the first appeal, followed supposedly by a repeat performance of filing an appeal in the second court.

The Attorney General speaking for MESC said:

> "the appeal to the circuit court for the county of Ingham was * * * not subject to dismissal unless and until it was finally held that the circuit court for the county of Wayne had jurisdiction. To hold otherwise would be to hold that a party who is entitled to appellate review may have that right to review defeated by a prior abortive appeal by the opposite party."

We agree that the Ingham Circuit Court was correct in refusing to dismiss the second appeal when on its face the first appeal was invalid, two of the claimants living out of the Wayne Circuit Court's jurisdiction and the remaining four having no right of appeal because they were not aggrieved parties.

To hold otherwise would impose upon the courts a tortuous procedure which would undermine attempts to give aggrieved persons an opportunity to be heard on review as expeditiously and at as little cost as possible. Such a thrust is in the best interest of all parties.

We hold that Ford's appeal to the Circuit Court for the County of Ingham was erroneously dismissed by the Court of Appeals.

The Court of Appeals is reversed.

---

[10] *See Detroit Fire & Marine Ins Co v Oakland County,* 284 Mich 130; 278 NW 791 (1938):

"A mere suggestion of another action pending involving some of the same questions, between different parties, in a court of another jurisdiction would not constitute a good plea in abatement and is not sufficient to abate the suit or void a decree made herein."

Fitzgerald and Lindemer, JJ., concurred with Coleman, J.

Levin, J., took no part in the decision of this case.

Ryan, J. I concur with Justice Coleman insofar as she holds that the Ingham Circuit Judge did not err in refusing on the record before him to grant claimants' motion based on GCR 1963, 116.1(4).

For the reasons stated in my opinion in *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241; 249 NW2d 41 (1976), I conclude that:

"for the purposes of § 27(c)(2)(ii) [of the Employment Security Act[1]], an employee's layoff begins when he first becomes 'unemployed' within the meaning of § 48[2] with respect to his initial employer and continues until the employee is no longer 'unemployed' with respect to such initial employer." 399 Mich at 264–265.

Section 48 of the Employment Security Act provides in relevant part:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate * * * .

"All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, and amounts paid in the form of retroactive pay, or in lieu of notice, shall be deemed remuneration in determining whether an individual is unemployed under this section and also in determining his benefit payments under section 27(c), for the period designated by the contract or agreement providing for the pay-

[1] MCLA 421.27(c)(2)(ii); MSA 17.529(c)(2)(ii).
[2] MCLA 421.48; MSA 17.552.

ment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit * * * ."

Claimant Bania became laid off and unemployed by Ford Motor Company on Monday, July 15, 1968. He returned to work on Monday, August 5, 1968; however, he received vacation pay from Ford Motor Company for the work week beginning Monday, July 29, 1968. He was, therefore, no longer unemployed by his initial employer within the meaning of § 48 as of Monday, July 29. He was not laid off in excess of three weeks and is not entitled to back-to-work benefits under § 27(c)(2).

Claimant Mohammed's last day worked with Ford Motor Company was Friday, July 19, 1968 and he returned to work with Ford Motor Company on Monday, August 12, 1968. For the reasons set forth in my opinion in *Erves, supra,* I hold that he is not entitled to back-to-work benefits under § 27(c)(2).

WILLIAMS, J. The present proceeding like *General Motors Corp v Erves,* 395 Mich 604; 236 NW2d 432 (1975), requires this Court to construe § 27(c)(2) of the Michigan Employment Security Act (MESA)[1] and in particular the following language from that section:

"a period of unemployment * * * which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks * * * ."

In addition we are called upon to resolve a procedural question concerning the jurisdiction of the

_____
[1] 1967 PA 254; MCLA 421.27(c)(2); MSA 17.529(c)(2). In 1974 the back-to-work payment provision was repealed. 1974 PA 104.

Ingham Circuit Court to review an appeal taken by Ford Motor Company from an adverse decision by the Employment Security Appeal Board.

In this action we consider the following:

1. Whether a laid-off employee whose last day of work was on Friday, July 12, 1968, who was advised a layoff would begin July 15, 1968, who returned to work three weeks and two days later on Monday, August 5, 1968, and who received vacation pay allocated by the employer to the last week of this period, is entitled to back-to-work benefits under § 27(c) of the MESA. (Claim of Bania.)

2. Whether the Court of Appeals was correct in reversing the decision of the Ingham Circuit Court and dismissing the action because another action involving the same claim had previously been filed and was pending in Wayne Circuit Court. (Claim of Mohammed.)

We answer both questions affirmatively. In order to simplify matters we separate the factual and legal discussions of the claims of Bania and Mohammed.

### I—CLAIM OF BANIA

#### A. Facts

Jan Bania was an employee of the Ford Motor Company at its Livonia plant. He was notified on April 29, 1968 by intra-company communication to all hourly employees of the Livonia plant that a scheduled plant shutdown would begin July 15, 1968 and normal operations would resume on August 5, 1968. Claimant's last day of work was Friday, July 12, 1968 and he returned to work as scheduled on Monday, August 5, 1968.

At the hearing Donald W. Shepler, Supervisor of

Hourly Personnel and Labor Relations, testified on cross-examination that there was no work available for Jan Bania from July 13 to August 4, 1968 because the "plant, for all intents and purposes, was on a vacation shutdown, or closed down, or whatever term you want to use".

As is permitted by § 48 of the MESA[2] Ford designated the last week of shutdown for the allocation of Bania's accrued vacation pay. Bania received this pay on July 12, 1968.

Claimant filed with the commission and qualified for unemployment compensation. The commission found the week ending July 20, 1968, to be his waiting week and awarded him benefits of $50 for the week ending July 27, 1968. However, as the allocated vacation pay for the week ending August 3 was in excess of his weekly benefit rate, he was held by the commission to be ineligible for benefits during that week. Upon returning to work he applied for and was awarded back-to-work benefits of $50 for the week ending July 27, 1968.

## B. Court May Reach Substantive Issue

As we uphold the Court of Appeals decision dismissing this action on procedural grounds (see § II of this opinion), it is not necessary, nor in most instances would it be appropriate, for us to then consider the substantive issues. Normal practice would dictate that the parties refile in circuit court, and start the process anew. However, special circumstances are present in this action which make treatment of the substantive issue proper. First, the cases before this Court are test cases representing thousands of similar claims which have been pending since 1968. Further delay in

[2] MCLA 421.48; MSA 17.552.

resolution of the issues is undesirable. Second, the parties were put on notice that we wished to consider the specific issue relating to the impact of receiving vacation pay on eligibility for unemployment. They have briefed the issue in a commendable fashion and do not object to our reviewing this issue. Their briefs are supplemented by the various opinions from the administrative and judicial bodies below who have discussed this issue. Inasmuch as we have the authority to act under GCR 1963, 865.1(7), we deem it appropriate to consider and decide the substantive issues raised in the claim of Bania.

## C. Receipt of Vacation Pay Does Not Terminate Layoff

Bania was out of work from July 12, 1968 to August 5, 1968. (See § I, D of this opinion for discussion as to why layoff period is measured from July 12, the last day worked.) As is permitted by § 48 of the MESA[3] his employer designated the week ending August 3, 1968 for the allocation of vacation pay. Receipt of payments "for a vacation or a holiday" disqualify an employee for unemployment compensation benefits during the period designated by the employer because the employee is not "unemployed" within the meaning of § 48.

[3] Section 48 provides in pertinent part:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him * * * .

"All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, * * * shall be deemed remuneration in determining whether an individual is unemployed under this section * * * for the period designated by the contract or agreement providing for the payment, or if there is no contractual specification of the period to which such payments shall be allocated, then for the period designated by the employing unit or former employing unit * * * ." MCLA 421.48; MSA 17.552. *See Brown v LTV Aerospace Corp,* 394 Mich 702, 708; 232 NW2d 656 (1975).

See *Brown v LTV Aerospace Corp,* 394 Mich 702, 708; 232 NW2d 656 (1975). However, it does not follow that receipt of such payments means that he is no longer laid off under § 27(c)(2).[4]

Referee Wesleyan Voigt was correct when he concluded that:

"the claimant was on lay-off and for the last week of such period, he was issued vacation pay which exceeded his weekly benefits rate, and consequently, was ineligible for benefits for this particular week. However, he performed no work for his employer during such week, and this was a continuance of his layoff which began July 12, 1968. Under the circumstances the vacation payment is not found to affect his lay-off for purposes of qualification for the so-called back-to-work payment. This provision of the act does not require that an individual be eligible for waiting week credit and for benefits in each of the weeks involved in the lay-off period as he may be eligible for only a waiting week, or one or more benefit payment weeks."

As has been stated in this opinion and in *Erves, supra,* the term "layoff" denotes a particular status between an employer and his employee whereby the employee's work is terminated at the will of the employer for a specific or indefinite period of time because no work is available. While Jan Bania received vacation pay allocated to the week ending August 3, that week there was no available work for Bania with Ford Motor Company. Consequently, he must be considered laid off for the entire period from July 12, 1968 to August 5, 1968.

Our conclusion that receipt of vacation pay does not interrupt a layoff period is also supported by the fact that the MESC, the agency charged with

---

[4] *See* discussion of the distinction between "unemployment" and a "layoff" in *Erves, supra,* 632–634.

the administration of the MESA, treats the receipt of vacation pay in the same manner. Section 5648 of the MESC manual provides in pertinent part:

"1. *A layoff period will not be interrupted by:*

\* \* \*

"b. *A vacation payment or a holiday payment made for any period during the layoff period,* even though under contract provisions such payment is allocated to a specific day(s) or week(s) during the period of unemployment, or, in the absence of contract provisions, is so allocated by the employer. The payment will, of course, as provided in Section 48 of the Act, be held to be remuneration and will be considered in determining eligibility for waiting period credit or benefits, but, *since no work is performed, receipt of the payment does not interrupt the layoff."* (Emphasis added.)

## D. Layoff Commences as of the Last Day Worked

In *General Motors Corp v Erves,* 395 Mich 604, 637; 236 NW2d 449 (1975) (opinion of Williams, J.), we said that for the purposes of determining the eligibility for back-to-work payments the legislators intended that the layoff period be measured from the last day worked. This conclusion was based in part on the fact that elsewhere in the MESA a "layoff" was measured as of the last day worked[5] and because the MESC, the agency charged with the administration of the MESA, both prior and subsequent to the adoption of the 1967 amendments to the back-to-work payment provisions, treated a layoff as commencing as of the last day worked.

Jan Bania's last day of work was Friday, July 12, 1968 and, for the purposes of determining eligibility for back-to-work payments, the layoff

[5] *See General Motors Corp v Erves, supra,* fn 10 and accompanying text.

period must be measured from that date. That the employer posted an intra-company notice to all hourly workers on April 29, 1968 which listed the "Vacation Layoffs" as beginning the week of July 15, 1968 does not alter this fact.

In *Erves* we said that a layoff is "a termination of employment at the will of the employer * * * ." 395 Mich 633. While the employer has the power to lay off his employees in accordance with the exigencies of the production schedule, it is the statute, not the employer, which determines when a layoff commences *for purposes of determining eligibility for back-to-work benefits.* If the period of the layoff for § 27(c)(2) purposes was measured solely by the dates set forth in an employer's notice to his employees, the way would be opened for the employer to make the notice self-serving in order to deny employees benefits to which they are rightfully entitled.

While not dispositive, it appears that although the layoff was scheduled by announcement to begin Monday, July 15, the actual plant shutdown began July 13. The Supervisor of Hourly Personnel and Labor Relations of the Ford Motor Company, Livonia Transmission Plant, where plaintiff was employed, when asked "How many worked on July 13, Saturday, 1968?" responded, "I cannot answer you because of the *shutdown* for the 13th on through. * * * I would say a considerably very small work force * * * ."

Claimant Bania did not work regularly on Saturdays but he was subject to call on Saturdays and actually did work three Saturdays during the year 1968 prior to this particular layoff.

During the shutdown there was no work available for a worker such as Jan Bania. In response to a question whether an employee such as Bania if

he had wanted to work, could have worked between July 13 and August 4, Mr. Shepler said:

"There was not work available for the man who was on vacation or the man who was laid off, because we had established whatever maintenance personnel or whatever shipping personnel, powerhouse personnel and heat treat personnel were necessary. The plant, for all interests and purposes was on vacation shutdown * * * ."

In other words, at least with regards to claimant Jan Bania, reliance on the rule of the last day worked rather than the employer announced day of layoff is a fairer expression of the actual days of separation from employment.

Holding that a layoff commences as of the last day worked for § 27(c)(2) purposes in no way impinges upon the employer's power. He still has the right, subject to any restrictions in the employment contracts, to determine who will be laid off and when their last day of work will occur.

A layoff denotes a change in the relationship between the employer and the employee. A person is laid off when his employment terminates with the employer because there is no available work for him. For Bania, as of the end of his shift on Friday, July 12, 1968, there was no available work with Ford. His employment terminated at that time and the layoff must be measured as of that date.

Bania had a "period of unemployment * * * which commenced with a layoff * * * that continued * * * for more than 3 weeks". Since the employer does not challenge the fact that Bania met the other requirements of § 27(c)(2), he is entitled to back-to-work payments.

## II—CLAIM OF MOHAMMED

### A. Facts

The Michigan Employment Security Commission (the commission) determined that Mohammed was entitled to back-to-work benefits and this decision was affirmed by the hearing referee. Ford appealed to the appeal board and the Claim of Mohammed was consolidated with those of Bania, Rivenburgh, Alvarado, Dzierbicki, Coddington and Jackson, claimants in other test cases. The following outlines the complex procedural course these cases took before we finally granted leave to consider the claim of Mohammed. 390 Mich 781.

Dec. 29, 1969—Appeal board issues decision adverse to claimant Rivenburgh.

Jan. 26, 1970—Appeal board issues decision adverse in part to Jackson and favorable to other claimants on merits.

Jan. 12, 1970—Rivenburgh, resident of Macomb County appeals to Wayne Circuit Court.

Jan. 27, 1970—Remaining claimants file appeal in Wayne Circuit Court.

Feb. 5, 1970—Alvarado, Bania, Dzierbicki and Mohammed, residents of Wayne County, file an amended appeal as a class action in Wayne Circuit Court for themselves and for Jackson, Rivenburgh and Coddington who were not Wayne County residents (hereinafter called the *Alvarado* case).

Feb. 6, 1970—Ford files appeal in Ingham Circuit Court against all claimants except Rivenburgh (hereinafter called the *Jackson* case).

Aug. 10, 1970—Claimants move to dismiss the *Jackson* case in Ingham Circuit Court for the reason that a prior action involving same parties *(Alvarado)* is pending in Wayne Circuit Court.

Feb. 4, 1971—Ingham Circuit Judge denies the claimants' motion to dismiss.

Aug. 30, 1971—Ford's motion to dismiss granted by Wayne Circuit Judge in the *Alvarado* case.

Sept. 10, 1971—Claimants in the *Alvarado* case claim appeal with the Court of Appeals.

Nov. 9, 1971—Ingham Circuit Judge in *Jackson* case issues decision on the merits against claimants.

Apr. 11, 1973—Court of Appeals affirms the Wayne Circuit Court decision holding that several claimants in the *Alvarado* case were not aggrieved by the appeal board decision and the non-Wayne County resident claimants were in the wrong circuit court.

June 25, 1973—Court of Appeals reversed Ingham Circuit Judge and dismissed *Jackson* cases because prior Wayne County *Alvarado* cases were still pending. 47 Mich App 700; 209 NW2d 794 (1973).

July 13, 1973—Supreme Court denies application for leave to appeal in *Alvarado* cases. 389 Mich 816 (1973).

Sept. 28, 1973—Supreme Court grants leave to appeal in *Jackson* cases (only claimants Bania and Mohammed). 390 Mich 781 (1973).

## B. GCR 1963, 116.1(4)

The Court of Appeals was correct in reversing the Ingham Circuit Court's decision not to dismiss the *Jackson* case when such a dismissal was mandated by GCR 1963, 116.1(4). This court rule provides:

"In a party's first responsive pleading, or by motion filed not later than his first responsive pleading, a party

may demand that service of process be quashed or that judgment be entered dismissing 1 or more claims asserted against him upon any of the following grounds:

\* \* \*

"(4) another action is pending between the same parties involving the same claim \* \* \* ."

At the time Ford filed its appeal in the Ingham Circuit Court (the *Jackson* case), an appeal taken from the same appeal board decisions involving the same parties[6] and involving the same claims was pending in Wayne Circuit Court (the *Alvarado* case). Consequently, the Ingham Circuit Court should have granted claimants' motion to dismiss based upon GCR 1963, 116.1(4).

Ford contends that the Ingham Circuit Court refusal to grant claimants' motion to dismiss was proper. It relies on 1 CJS, Abatement and Revival, § 68, p 106, which pertinently states:

"The rule that the pendency of a prior action is ground for abating a subsequent action between the same parties for the same cause, does not apply where it appears on the face of the proceedings that the first action was instituted and is pending in a court which has no jurisdiction of the parties of a subject-matter of the action."

We need not here decide the applicability of this principle to Michigan jurisprudence in general or to GCR 1963, 116.1(4) in particular since we do not find the prior action filed in Wayne Circuit to be, *on the face of the proceeding,* in a court "which has no jurisdiction", because as of the time of the

---

[6] Claimant Rivenburgh, a member of the class of claimants in the class action appeal pending in the Wayne Circuit Court *(Alvarado)* was not named by Ford Motor Company in the action filed in Ingham Circuit Court *(Jackson).* The remaining claimants were parties in both actions.

Ingham Circuit Court's refusal to dismiss, the Wayne County case contained two undecided justiciable questions.[7]

### III—CONCLUSION

While not required to review the Jan Bania claim, we choose to reach the substantive issues presented in that claim in order to facilitate a final resolution to the thousands of pending back-to-work claims. We find Bania was laid off as of his last day of work on Friday, July 12, 1968 and he remained laid off until he returned to work three weeks and two days later on August 5, 1968. The receipt of vacation pay allocated to the last week ending August 3, 1968 did not interrupt the layoff period. Having met the other requirements of § 27(c)(2) as well, he is entitled to receive back-to-work benefits for the week ending July 27, 1968.

The Ingham Circuit Court erred in not granting claimants' motion to dismiss on the grounds that a prior appeal taken from the same appeal board decision was pending in the Wayne Circuit Court.

No costs, a public question of first impression being involved.

KAVANAGH, C. J., concurred with WILLIAMS, J.

---

[7] The amended claim of appeal taken to the Wayne Circuit Court was a class action whose members included four claimants who were successful in obtaining benefits at the administrative level, one who was unsuccessful and one who was only partially successful. The four successful claimants based their claim of appeal upon certain procedural errors. Whether these alleged procedural errors constitute sufficient ground upon which to base an appeal need not be resolved here. However, claimants did raise a justiciable issue which fell within the province of the Wayne Circuit Court, and not the Ingham Circuit Court, to resolve.

Two of the claimants did not reside in Wayne County. However, the question whether an MESC claimant may bring an appeal in the circuit court located in a county in which he does not reside was only recently discussed by this Court in *Brown v LTV Aerospace Corp,* 394 Mich 702; 232 NW2d 656 (1975), a case decided long after the appeals to the Wayne and Ingham Circuit Courts were filed.